Paul Y. CHASTAIN et al., Plaintiffs,

v.

AMERICAN TELEPHONE & TELE-
GRAPH COMPANY, Defendant.

Civ. A. No. 2088–70.

United States District Court,
District of Columbia.

Dec. 18, 1972.

Jerry S. Cohen, Washington, D. C., for plaintiffs.

Hugh B. Cox, Washington, D. C., for defendant.

## MEMORANDUM–ORDER

GASCH, District Judge.

This matter came on for consideration of plaintiffs' motion for summary judgment. Plaintiffs originally commenced this action on July 13, 1970, to recover treble damages for injuries alleged to have been suffered by them as a result of the defendant's violations of the federal antitrust laws. The alleged violation is an unlawful combination and conspiracy in restraint of interstate trade and commerce in the sale and distribution of mobile phones, specifically the "Attache Phones" involved here, and an unlawful conspiracy, combination and attempt to monopolize the distribution of the "Attache Phones." Plaintiffs contend that the refusal of defendant and its subsidiaries to register or provide "letters of intent" in Improved Mobile Telephone Service (IMTS) areas to "Attache Phone" purchasers is unreasonable as a matter of law. Plaintiffs further argue that the defendant's actions prevent competition in the mobile telephone market, and constitute a group boycott and concerted refusal to provide mobile

telephone service in violation of the antitrust laws.

In its opposition to the motion for summary judgment, the defendant asserts, *inter alia*, that there exist genuine issues of material fact which preclude disposition of this matter on summary judgment. The basic question raised by the defendant is whether the policy and practices involved in the circumstances of this case are reasonable and fair. During the pendency of this litigation, the defendant has insisted that it is justified in refusing to register and connect plaintiffs' "Attache Phones" in IMTS areas on the grounds that the general use of the phones would interfere with the maintenance of quality service for its customers. Specifically, the defendant contends that its action herein is reasonably designed to achieve, and does result in, better mobile telephone service throughout the entire telephone system by improving the grade of customer service, ensuring the privacy of conversations, obviating burdens on operators and associated costs, eliminating interference with automatic channel selection, reducing channel congestion, and in various other ways.

After reviewing these complex factual contentions and the relevant points and authorities, it is apparent that this case raises a serious question as to the applicability of the primary jurisdiction doctrine. The main problem presently before the Court is not one of invoking the penalties of the antitrust laws, but rather one of reconciling the purposes of the antitrust law with the policies supporting other regulatory legislation. Although it has been generally recognized that a group boycott or concerted refusal to deal is a *per se* violation,[1] the scope and nature of the control over a regulated industry may bring such combined action within legal boundaries. See Silver v. New York Stock Exchange, 373 U.S. 341, 83 S.Ct. 1246, 10 L.Ed.2d 389 (1963); Carter v. American Telephone & Telegraph Company, 365 F.2d 486 (5th Cir. 1966). The application of the primary jurisdiction doctrine in the area of regulated industries permits an initial determination as to whether the crucial questions raised in an antitrust case actually fall within the province of the regualtory agency. As one notable commentator has stated:

> The courts are obviously well equipped to make initial decisions involving the application of the antitrust policy. But, before the particular regulatory agency has defined the particular regulatory policy in the particular case, the courts are not well equipped to make initial decisions involving accommodation of the antitrust policy to the regulatory policy.[2]

One case which invoked the doctrine of primary jurisdiction in a similar set of facts and circumstances is Carter v. American Telephone & Telegraph Company, 365 F.2d 486 (5th Cir. 1966). In that case the United States Court of Appeals for the Fifth Circuit upheld the District Court's ruling that the Federal Communications Commission had primary jurisdiction to resolve questions concerning the validity of a tariff which allowed the defendant telephone company to suspend or terminate service if plaintiffs' device was connected with the defendant's facilities. The case was originally filed in the federal district court as a private antitrust suit against telephone companies for treble damages and injunctive relief. The District Court concluded that due to the "special competence and 'expertise'" in the technical and complex matter of telephone communication, the Federal Communications Commission, pursuant to the primary jurisdiction doctrine, is entrusted with the

1. *See* Radiant Burners, Inc. v. Peoples Gas Light & Coke Co., 364 U.S. 656, 81 S.Ct. 365, 5 L.Ed.2d 358 (1961); Klor's, Inc. v. Broadway-Hale Stores, Inc., 359 U.S. 207, 79 S.Ct. 705, 3 L.Ed.2d 741 (1959).

2. 3 Davis, Administrative Law § 19–05, at 25, quoted in Carter v. American Telephone & Telegraph Co., 365 F.2d 486, 493–494, n. 13 (5th Cir. 1966).

responsibility to determine "the justness, reasonableness, validity, application and effect of the tariff and practices here involved." Carter v. American Telephone & Telegraph Company, 250 F.Supp. 188, 192 (N.D.Texas, 1966). The Court retained jurisdiction to pass ultimately upon the antitrust issues after the culmination of the administrative proceedings. Upon remand, the Commission held:

> that the tariff is unreasonable in that it prohibits the use of interconnecting devices which do not adversely affect the telephone system. See Hush-A-Phone Corp. v. U. S., 99 U.S.App.D.C. 190, 193, 238 F.2d 266, 269 (D.C.Cir., 1956), holding that a tariff prohibition of a customer supplied 'foreign attachment' was 'in unwarranted interference with the telephone subscriber's right reasonably to use his telephone in ways which are privately beneficial without being publicly detrimental.' The principle of Hush-A-Phone is directly applicable here, there being no material distinction between a foreign attachment such as the Hush-A-Phone and an interconnection device such as the Carterfone, so far as the present problem is concerned. Even if not compelled by the Hush-A-Phone decision, our conclusion here is that a customer desiring to use an interconnecting device to improve the utility to him of both the telephone system and a private radio system should be able to do so, so long as the interconnection does not adversely affect the telephone company's operations or the telephone system's utility for others.

13 F.C.C.2d 420, 423–424 (1968).

The *Carter* decision is representative of a long line of cases which recognize that the primary jurisdiction reference is often imperative.[3] Perhaps the most accurate summary of the interrelation of the primary jurisdiction doctrine and the antitrust laws was espoused in United States v. Radio Corp. of America, 358 U.S. 334, 348, 79 S.Ct. 457, 466, 3 L.Ed. 2d 354 (1959):

> Accordingly, this Court consistently held that when rates and practices relating thereto were challenged under the antitrust laws, the agencies had primary jurisdiction to consider the reasonableness of such rates and practices in the light of the many relevant factors including alleged antitrust violations, for otherwise sporadic action by federal courts would disrupt an agency's delicate regulatory scheme, and would throw existing rate structures out of balance.

For the reasons outlined in this opinion, the Court concludes that the primary jurisdiction doctrine should be invoked and therefore the instant matter is referred to the Federal Communications Commission for appropriate administrative proceedings. This decision is consistent with the Congressional mandate that the Commission execute and control the national communications policy contained in the Communications Act of 1934, 47 U.S.C.A. § 151 et seq. Under that Act the Commission has been assigned the task of requiring telephone companies to supply "service upon reasonable request therefor," and where the Commission "finds such action necessary or desirable in the public interest," to compel interconnection with other carriers at approved rates. 47 U.S.C. § 201(a). The Communications Act also provides that "[a]ll charges, practices, classifications, and regulations" of telephone companies "shall be just and reasonable"; any "unjust or unreasonable" practices are "declared to be unlawful." 47 U.S.C. § 201(b). The Commission is empowered to "prescribe

---

3. Pan American World Airways, Inc. v. United States, 371 U.S. 296, 83 S.Ct. 476, 9 L.Ed.2d 325 (1963); Far East Conference v. United States, 342 U.S. 570, 72 S.Ct. 492, 96 L.Ed. 576 (1952); United States Nav. Co. v. Cunard S.S. Co., 284 U.S. 474, 52 S.Ct. 247, 76 L.Ed. 408 (1932). *See also* cases listed in Carter v. American Telephone & Telegraph Co., 365 F.2d 486, 498, n. 23 (5th Cir. 1966).

such rules and regulations as may be necessary in the public interest." 47 U.S.C. § 201(b). Furthermore, it is deemed unlawful for a "common carrier to make any unjust or unreasonable discrimination in charges, practices, classifications, regulations, facilities, or services." 47 U.S.C. § 202(a). The Commission is also authorized to examine all tariffs filed and may determine and prescribe what "[charge,] classification, regulation, or practice is or will be just, fair, and reasonable." 47 U.S.C. § 205(a). The carrier may be ordered by the Commission to expand facilities for the performance of its duties as a public utility if such expansion is "in the interest of public convenience and necessity" or "the expense involved therein will not impair the ability of the carrier to perform its duty to the public." 47 U.S.C. § 214(d). Finally, the Commission is obligated to keep informed as to "technical developments and improvements in wire and radio communication . . . to the end that the benefits of new inventions and developments may be made available to the people of the United States." 47 U.S.C. § 218.

The abundant powers granted to the Federal Communications Commission reflect the sound Congressional intention that one governmental body be vested with the responsibility of coordinating and enforcing a uniform national communications policy. The doctrine of primary jurisdiction is essential to the achievement of this goal. If the Court ignored this doctrine and pretended to be knowledgeable in the technical field of telephonic communications, the undesirable result would be the subjection of common carriers to the commands of two masters—the Communications Act of 1934 as administered by the Commission and the antitrust laws as administered by the courts. This Court is unwilling and unable to assume the initial responsibility of evaluating the highly technical questions raised by the parties in this case.

Accordingly, the Court concludes that the appropriate path to follow is the one outlined in *Carter,* and therefore the instant matter is referred to the Commission for a full administrative determination of all questions relating to the justness, reasonableness, validity and effect of the policy and practices that precipitated this litigation. The Court will retain jurisdiction to pass ultimately upon the antitrust issues, but proceedings will be stayed pending the consummation of the administrative process.

Finally, it must be emphasized that nothing expressed or implied in this opinion should be construed to limit the scope of the Commission's examination, suggest the factors to be considered by the Commission, or influence the conclusion to be reached by the Commission.