**AMERICAN TELEPHONE AND TELEGRAPH COMPANY, Petitioner,**

v.

**FEDERAL COMMUNICATIONS COMMISSION and the United States of America, Respondents.**

**No. 74–2101.**

United States Court of Appeals, District of Columbia Circuit.

Argued Oct. 28, 1975.

Decided Feb. 1, 1977.

Michael Boudin, Washington, D. C., with whom Daniel M. Gribbon, Washington, D. C., and F. Mark Garlinghouse, New York City, were on the brief for petitioner.

John Ingle, Counsel, F. C. C., Washington, D. C., for respondents. Ashton R. Hardy, Gen. Counsel, Joseph A. Marino, Assoc. Gen. Counsel, Washington, D. C., at the time the brief was filed, C. Grey Pash, Jr., Counsel, F. C. C., Howard E. Shapiro, and Laurence K. Gustafson, Attys., Dept. of Justice, Washington, D. C., were on the brief for respondents.

Jerry S. Cohen, Herbert E. Milstein, Michael D. Hausfeld, Kenneth A. Cox, William J. Byrnes and Raymond C. Fay, Washington, D. C., filed a brief on behalf of Paul Y. Chastain, et al., as amicus curiae urging affirmance.

Before BAZELON, Chief Judge, and ROBINSON and ROBB, Circuit Judges.

Opinion for the Court filed by Circuit Judge ROBB.

ROBB, Circuit Judge:

This is a petition by American Telephone & Telegraph Company (AT&T), pursuant to 47 U.S.C. § 402(a) and 28 U.S.C. § 2342, to review orders of the Federal Communications Commission, 43 F.C.C.2d 1079 (1973), *recon. denied,* 49 F.C.C.2d 749 (1974). The challenged orders were issued in response to a referral from the United States District Court for the District of Columbia in a private antitrust suit. *Chastain v. AT&T,* 351 F.Supp. 1320 (D.D.C.1972). In that suit the plaintiffs attacked as unreasonable under the Communications Act the requirement by AT&T that mobile telephones be equipped for dial operation when registered in areas where the AT&T system provides dial mobile telephone service. The plaintiffs are distributors of a portable mobile telephone, known as Attache Phone, equipped solely for non-dial operation.

The District Court referred the matter to the Commission "for a full administrative determination of all questions relating to the justness, reasonableness, validity and effect of the policy and practices that precipitated this litigation." *Id.* at 1323.

In the Commission proceedings that followed the District Court's reference AT&T requested an evidentiary hearing in order to demonstrate the substantial technical, economic and operational benefits from its requirement that mobile telephones be equipped for dial operation in areas where AT&T provides dial mobile telephone service. This dial service is known as Improved Mobile Telephone Service, or IMTS. The company filed affidavits summarizing the technical and practical considerations underlying its requirement.

The Commission concluded that an evidentiary hearing was not warranted, that the reasonableness and effect of AT&T's exclusionary policy could be determined upon the basis of the pleadings and affidavits on file. "In addition" said the Commis-

sion "for the purpose of reaching our conclusions, we are accepting as true all testimonial facts offered by AT&T." 42 F.C. C.2d at 319. The Commission however requested that "AT&T supply us with facts as to whether, or to what extent, if any, the exclusion of the Attache Phone from IMTS areas was based upon technical surveys or any other studies carried out before the policy decision to exclude Attache Phone from registry was implemented." *Id.* at 323. In response to this request AT&T submitted surveys or studies which had been made.

After oral argument the Commission held, and so advised the District Court, that AT&T's policy was unreasonable when applied to areas that were not congested. The Commission said AT&T had not satisfied its request for "survey and study information", which might have revealed "legitimate roots in technical experience" for AT&T's exclusionary policy. 43 F.C.C.2d at 1082. The documents produced, said the Commission, contained only surveys of customers conducted between 1957 and 1963, and did not disclose "technical data" justifying the company's policy. Three Commissioners dissented.

AT&T filed a petition for reconsideration, protesting the Commission's failure to accept the facts set out in the AT&T affidavits, and contending that the Commission's decision was not supported by evidence. By a vote of four to three the Commission denied the petition. The majority held:

> . . . Although there was evidence that the introduction of manual units into IMTS areas had adverse effects on general service, at no time was the company able to document what the specific effect would have been in any given area where portable manual equipment might have been utilized. The fact that customer demand for portable manual units was minimal, did not justify a total exclusion from registry without a technical showing of how great the deleterious effects would have been in varying IMTS areas.

\*  \*  \*  \*  \*  \*

. . . Moreover, AT&T had an opportunity to introduce such evidence in response to the Commission's request for information prior to oral argument. The company had been asked to supply data in order to demonstrate whether exclusion of the Attache Phone from registry was based upon technical surveys carried out before implementation of the policy. AT&T's response proved nothing beyond the fact that some subscribers had experienced difficulties with manual mobile telephone systems. [Footnote omitted.]

49 F.C.C.2d at 750.

On this petition for review AT&T complains that the Commission erred in denying it an evidentiary hearing and that the Commission's decision is arbitrary, capricious and unsupported by reasoned findings.

While the case was pending in this court the antitrust suit in the District Court, *Chastain v. AT&T,* 401 F.Supp. 151, D.C., was dismissed with prejudice by stipulation of the parties. We therefore invited AT&T and the Commission by memoranda to address two issues: (1) is the case now moot? and (2) if not, should it be remanded to the Commission to consider vacating its earlier decision as an exercise of its discretion? In response, both AT&T and the Commission submit that the case is not moot and should be decided on its merits. We agree.

■ Although the dispute between Chastain and AT&T has been resolved in the District Court, the Commission's order continues to have legal and practical impact on AT&T. Thus we are told that the Commission's decision has been invoked in radio licensing proceedings by private parties attempting to disqualify subsidiaries of AT&T; and in comparative proceedings the Commission has added issues based upon its *Chastain* ruling. *See Radiofone,* 51 F.C. C.2d 1048 (1975); *Houston Radiofone Service,* 51 F.C.C.2d 938 (1975); *Answerfone, Inc.,* 51 F.C.C.2d at 868 (1975). In short the legal consequences of the Commission's decision have not disappeared.

■ Turning to the merits we conclude that AT&T was entitled to an evidentiary hearing and that the Commission decision in the absence of a hearing was arbitrary.

The basis for the Commission's decision appears in paragraphs 19 and 21 of its memorandum opinion and order:

. . . in those IMTS areas of high congestion, the adverse effects of portable manual mobile telephones might have created a serious problem to continued efficiency. The policy became unreasonable only where portable service was denied in IMTS areas of no congestion . . . . We find that AT&T's stated policy that it attempted to make its new installations generally IMTS installations, and that the conversion would have been made in areas where initially channel congestion did not exist, unreasonable and prejudicial to Petitioners' customers. Where congestion was not a problem, the efficiency of IMTS would not have been greatly impaired by the use of portable manual units. [Footnote omitted.]

\* \* \* \* \* \*

We have been presented with what amounted to a complete denial of registry on the assumption that inclusion of portable manual telephones would have inconvenienced the IMTS system, and yet we have not been presented with satisfactory technical data that this would necessarily have been the case.

43 F.C.C.2d at 1083–84.

The Commission did not éxplain why the "technical data" set out in the affidavits filed by AT&T were unsatisfactory. Moreover, the Commission's conclusion is at odds with the assertions of fact contained in those affidavits—assertions which the Commission professed to accept as true. Thus the affidavit of A. A. Bottani, Jr., an electrical engineer and marketing supervisor employed by AT&T stated:

. . . in every area—whatever its size, population density, number of available channels, extent of frequency congestion, etc.—the quality of mobile telephone service is improved to a greater or lesser degree by instituting IMTS service and not registering mobile manual telephones.

In particular, IMTS service and non-registration of manual mobile telephones in any given area will improve mobile telephone service regardless of whether there is substantial channel congestion or comparatively light use of the available channel or channels. Thus, the use of IMTS systems with IMTS mobile telephones will save operator time; improve the grade of service by reducing the N.C. [No Circuit] rate, and enhance privacy of conversations, whatever the existing level of channel use may be; and, in any IMTS system, registration of mobile manual telephones will waste operator time unnecessarily, adversely affect the grade of service by increasing the N.C. rate, and impair the privacy of conversations to some extent. (A. 37–38)

Mr. Bottani explained in detail that many of the benefits of IMTS are largely or entirely unrelated to channel congestion and would be impaired wherever non-dial mobile telephones were registered at IMTS base stations. In particular, privacy would always be invaded by the necessity for channel monitoring; the lack of multi-channel access would always hinder the placing of calls to non-dial mobile telephones; and the use of such non-dial sets in IMTS areas would unnecessarily waste operator time, thus imposing additional costs ultimately borne by telephone users. *See* Bottani aff. paras. 23, 27, 32 (A. 31–32, 34, 36).

Indeed, in non-congested areas at least one element of harm from use of non-dial equipment would often be greater than in congested areas. The inconvenience and burden on operators may, as Mr. Bottani's affidavit explained (para. 22 (A. 31)), "actually be enhanced in areas . . . where there may be no substantial frequency congestion." In such areas an operator may be responsible for calls through a number of base stations. *Id.* Furthermore, in smaller communities it is especially likely that the operator will have other responsibilities in addition to handling mobile telephone calls. *Id.*

Mr. Bottani's assertions were not mere conclusions but were ⁻tatements of fact.

They were uncontradicted and if the Commission accepted them as true, as it professed to do, they plainly made out a prima facie case for the reasonableness of the AT&T requirements as applied to non-congested areas. If the Commission did not accept them as true—and obviously it did not—then AT&T was entitled to an evidentiary hearing in which it could attempt to sustain its allegations. As we said in *Citizens Committee v. FCC*, 141 U.S.App.D.C. 109, 117, 436 F.2d 263, 271 (1970):

> . . . it is precisely a situation like the one revealed by this record which motivated the Congress to stress the availability to the Commission of the hearing procedure. The controversy that developed in this case is one that characteristically continues to be blurred until it is subjected to the adversary process—inside the hearing room, and not out.

In its order denying AT&T's petition for rehearing, 49 F.C.C.2d 749, the Commission attempted to justify its denial of an evidentiary hearing on the ground that AT&T had an opportunity to introduce additional evidence in response to the Commission's request for information, prior to oral argument. We think however that the Commission's argument expands that request beyond its fair and reasonable intendment. As we have seen the request was only for any "technical surveys or any other studies carried out before the policy decision to exclude Attache Phone from registry was implemented." 42 F.C.C.2d at 323. There was no hint that the Commission found the statements of fact in the company's affidavits to be untrue or inadequate with respect to any issue presented. In particular, although the Commission in its decision found there was no evidence of the "specific effect" that the company's rule would have "in any given area" there was no suggestion that additional evidence on this point was required. If the Commission wanted and intended to ask for such evidence fairness required it to say so in plain words, not by way of a cryptic request for "any . . . surveys or . . . studies." As it was, AT&T satisfied the request by producing the surveys and studies it had made.

The second question we invited the parties to address was whether, assuming the case is not moot, it should "be remanded to the Commission to consider vacating its earlier decision as an exercise of its discretion? *Cf. NBC v. FCC,* 170 U.S.App.D.C. 173, 516 F.2d 1180 (1975) (opinion of Fahy, J.)." The *NBC* case involved a difficult and controversial application of the Commission's fairness doctrine. While the Commission's order was on review, legislation was passed which raised a substantial question of mootness. Recognizing that " '[a]ny decision on the merits [by the court] would be an abstract ruling' and that compliance with its order would be 'meaningless'." the Commission requested that it be allowed to vacate its order. 516 F.2d at 1182. Judge Fahy noted that a court may "adjust its relief to the exigencies of the [administrative] case [on appeal] in accordance with the equitable principles governing judicial action," *Id.* at 1183, *quoting Ford Motor Co. v. Labor Board,* 305 U.S. 364, 373, 59 S.Ct. 301, 83 L.Ed. 221 (1939) and concluded that under the circumstances it was appropriate to allow the Commission to consider vacating its order before review was concluded.

■ Both AT&T and the Commission opposed the remand of this case. Nevertheless, for the reasons expressed below we conclude that the Commission should be allowed to consider vacating its order and abandoning the controversy as an alternative to according AT&T an evidentiary hearing.

When AT&T opposed a remand the merits of the case had not been reviewed. AT&T feared a remand at that stage of the litigation would generate unnecessary delay because the Commission would almost certainly refuse to vacate its order. "[T]here is no reasonable likelihood . . . that a remand *now* would result in the FCC choosing to withdraw its earlier decision. Consequently, this procedure would almost certainly result in further controversy at the FCC level, followed by its refusal to vacate its earlier decision, followed in turn by reinstatement of this review proceeding." (Supp. memo at 7, emphasis added.) AT&T

did not, on the other hand, oppose allowing the Commission to consider abandoning the controversy if this court, as it has now done, refused to affirm the Commission's order. In fact, AT&T noted that possibility with no apparent dissatisfaction. *Id.* at 8.

Likewise, the Commission expressed only limited opposition to a remand. The Commission contended in its supplementary memorandum that its order in this case, unlike the order in the *NBC* case, had not become meaningless. (Supp. memo at 6.) Consequently, it saw no reason to disturb the ordinary course of review; however, it did not indicate whether it would desire to continue the controversy if a remand for further proceedings were ordered.

It is possible that the Commission would prefer to abandon the controversy rather than to conduct an extensive evidentiary hearing. Even though the case is not technically moot, settlement of the antitrust claim has eliminated the initial justification for the proceeding. Furthermore, the staleness of AT&T's allegedly unlawful behavior and the apparent absence of any issue concerning monetary damages (Govt. Br. at 16, n.5) might dampen the Commission's enthusiasm for continued proceedings.

By broadening the remand to enable the Commission to consider terminating the proceedings, we are not suggesting that it should do so. That is a matter for the Commission's sound discretion.

The case is remanded, with directions to accord AT&T an evidentiary hearing if the Commission desires to continue the proceeding.

*So ordered.*