759 F.2d 936
 245 U.S.App.D.C. 210
 RADIOFONE, INC., et al., Petitioners,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
National Association of Business & Educational Radio, Inc.,
Intervenor.
RADIOFONE, INC., et al., Appellants,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
National Association of Business & Educational Radio, Inc.,
Intervenor.
TELOCATOR NETWORK OF AMERICA, Petitioner,
v.
FEDERAL COMMUNICATIONS COMMISSION and United States of
America, Respondents,
National Association of Business & Educational Radio, Inc.,
Data Com Inc., Intervenors.
TELOCATOR NETWORK OF AMERICA, Appellant,
v.
FEDERAL COMMUNICATIONS COMMISSION, Appellee,
National Association of Business & Educational Radio, Inc.,
Intervenor.
 Nos. 83-1773, 83-1774, 83-1806 and 83-1807.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued April 9, 1984.
Decided April 19, 1985.
 
 Kenneth E. Hardman, Washington, D.C., with whom Phillis E. Hartsock was on brief, for Telocator Network of America, petitioner in No. 83-1806 and appellant in No. 83-1807.
 Ashton Hardy, New Orleans, La., with whom Arthur Blooston and James J. Popham, Washington, D.C., were on brief, for Radiofone, Inc., et al., petitioners in No. 83-1773 and appellants in No. 83-1774.
 Roberta L. Cook, Counsel, F.C.C., Washington, D.C., with whom J. Paul McGrath, Asst. Atty. Gen., Bruce E. Fein, Gen. Counsel, Daniel M. Armstrong, Associate Gen. Counsel and John E. Ingle, Counsel, Washington, D.C., were on brief, for F.C.C., respondent in Nos. 83-1773 and 83-1806 and appellee in Nos. 83-1774 and 83-1807.
 Robert B. Nicholson and Frederic Freilicher, Attys., Dept. of Justice, Washington, D.C., were on brief, for U.S., respondent in Nos. 83-1773 and 83-1806.
 David E. Weisman, Washington, D.C. with whom Rosalind Kurz Allen, Washington, D.C., was on brief, for Nat. Ass'n of Business & Educational Radio, Inc., intervenors in Nos. 83-1773, 83-1774, 83-1806 and 83-1807.
 Robert W. Healy, Washington, D.C., was on brief, for Data Com Inc. intervenor in No. 83-1806.
 Before WRIGHT, EDWARDS and SCALIA, Circuit Judges.
 Opinion for the Court filed by Circuit Judge SCALIA.
 Statement filed by Circuit Judge J. SKELLY WRIGHT.
 Concurring opinion filed by Circuit Judge HARRY T. EDWARDS.
 SCALIA, Circuit Judge.
 
 
 1
 The Federal Communications Commission (FCC) issued a Declaratory Ruling holding that Auto Page, Inc., a company offering radio paging service in Louisiana, was a private land mobile radio operator and not a common carrier. Several of Auto Page's competitors petitioned this court for review of the FCC's ruling. While our decision was pending, Auto Page went out of business. The issue now before us, presented by the FCC's motion to dismiss, is whether that event renders the present case moot.
 
 
 2
 * The controversy before us began when Southern Message Service, Inc. ("Southern") charged Auto Page before the Louisiana Public Service Commission ("LPSC") with operating as a radio common carrier without a certificate from the LPSC. Auto Page responded that it was a private land mobile radio system rather than a common carrier, and was thus immunized from state entry regulation by Section 331(c)(3) of the Federal Communications Act of 1934, as added by Pub.L. No. 97-259, 96 Stat. 1097, codified at 47 U.S.C. Sec. 332(c)(3) (1982).[1] In October 1982 LPSC sustained the complaint and ordered Auto Page to cease and desist operations as a radio common carrier. Auto Page sought an injunction against enforcement of the LPSC order in the United States District Court for the Middle District of Louisiana. In response to an FCC suggestion, in May 1983 the court referred the matter to the FCC for exercise of its primary jurisdiction.
 
 
 3
 The crux of the dispute before the Commission was whether Auto Page's use of telephone lines to receive incoming telephone calls and to relay the information thus received to its radio facilities, and its use of a private telephone line for transmitter control purposes, caused its station to be "interconnected with a telephone exchange or interexchange service or facility" within the meaning of 47 U.S.C. Sec. 332(c)(1), which renders such interconnection destructive of private land mobile service status. The FCC requested comments from interested parties and received them from LPSC, Auto Page, the National Association of Business and Educational Radio, Inc., Southern, Radiofone, Inc., and several other competitors of Auto Page. On July 19, 1983, the FCC released a Declaratory Ruling, Auto Page, Inc., FCC No. 83-347, which declared that Auto Page was duly licensed as a private land mobile radio system; that the service it provided was private land mobile radio service within the scope of Sec. 332(c)(3); and that any entry or rate regulation of its service offering by a state or local government was ineffective. 48 Fed.Reg. 34,804 (1983). The Commission ordered its Secretary to cause a copy of the ruling to be published in the Federal Register "to provide guidance to the public and to state and local regulatory authorities." Id. at 34,806.
 
 
 4
 Southern, Radiofone, and several other companies that had filed comments with the FCC filed petitions for review of the FCC's ruling in this court under 47 U.S.C. Sec. 402(a).[2] A company, and a trade association of companies, engaged in business similar to that of Auto Page (but not Auto Page itself) intervened on behalf of the Commission. After oral argument had been heard, we were advised that Southern had purchased all of the equipment of Bela Communications, Inc., of which Auto Page was a wholly-owned subsidiary, and that Auto Page had ceased doing business. The FCC suggested that the cases before us had become moot. Petitioners opposed the suggestion.
 
 II
 
 5
 All members of the court are in agreement that this case is moot and that we must vacate the agency's order pursuant to United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), and A.L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 329, 82 S.Ct. 337, 340, 7 L.Ed.2d 317 (1961). See Tennessee Gas Pipeline Co. v. FPC, 606 F.2d 1373, 1380-83 (D.C.Cir.1979). It seems to the writer of this opinion, however, that some further analysis is called for. That is set forth in Part III below, which Judges Wright and Edwards do not join.
 
 III
 
 6
 Federal courts will not hear a case unless it poses "a present, live controversy of the kind that must exist if [a court is] to avoid advisory opinions on abstract propositions of law." Hall v. Beals, 396 U.S. 45, 48, 90 S.Ct. 200, 201, 24 L.Ed.2d 214 (1969). Petitioners maintain that qualification is met "because the FCC decision at issue ... has practical and legal impact on Petitioners/Appellants, as well as on Intervenors. The legal consequences of the Declaratory Ruling have not disappeared." Petitioners' Statement of Controversy at 1. The practical and legal impact to which petitioners allude is the effect upon their behavior (and the behavior of their competitors) of the interpretation of law adopted by the Commission regarding the meaning of "interconnection." That would indeed suffice to support this suit if the interpretation had been adopted as a rule--addressed, so to speak, to the world at large. All persons adversely affected by that rule would have standing to challenge its compliance with legal prescriptions designed for their protection. See 5 U.S.C. Sec. 702 (1982); Association of Data Processing Service Organizations, Inc. v. Camp, 397 U.S. 150, 90 S.Ct. 827, 25 L.Ed.2d 184 (1970). The situation is different, however, when an interpretation of a statute, or some other legal principle, is set forth as the rationale of an adjudication. No one would contend that a person affected by no more than the precedential effect of a district court decision would have standing to appeal that decision here. Standing to challenge agency adjudications is of course more expansive than standing to appeal lower court judgments, in that not only the losing party before the agency but even competitors of the winning party, or other persons with interests adverse to the winning party, may often sue. See, e.g., First National Bank of Smithfield v. Saxon, 352 F.2d 267 (4th Cir.1965). But their injury must still arise from the particular activity which the agency adjudication has approved (here, the operation of Auto Page as a private land mobile radio system) and not from the mere precedential effect of the agency's rationale in later adjudications. There is no authority for the latter proposition. In the present case, the approval of Auto Page's operation as a private land mobile radio service has become a matter of purely historical interest, with no present, real-world consequences; the dispute relating to that approval is therefore moot.
 
 
 7
 Petitioners refer us to American Telephone & Telegraph Co. v. FCC, 551 F.2d 1287 (D.C.Cir.1977). That case involved a challenge to an FCC order issued in response to a District Court referral "for a full administrative determination of all questions relating to the justness, reasonableness, validity and effect of the policy and practices that precipitated" a private antitrust suit against AT & T. Chastain v. AT & T, 351 F.Supp. 1320, 1323 (D.D.C.1972). While we were considering petitioners' challenges to the validity of the FCC's resultant order, the antitrust action was dismissed with prejudice by stipulation of the parties. We held, nonetheless, that the appeal was not moot because "the Commission's order continues to have legal and practical impact on AT & T." AT & T v. FCC, 551 F.2d at 1290. That legal and practical impact, however, consisted of more than the mere precedential effect of general principles of law adopted in the adjudication. The Commission order found that AT & T's practices had violated Sections 201(a), 202(a) and 214(a) of the Communications Act and had violated and continued to violate Section 203(c) of the Act; and levied a forfeiture against AT & T for the Section 203 violation. See Chastain v. AT & T, 43 F.C.C.2d 1079, 1081-87 (1973). Obviously, the forfeiture had continuing adjudicatory effect upon AT & T, regardless of the termination of the antitrust suit that had prompted the adjudication. So also did the finding of violation since, as the court pointed out, it had been put forward by applicants in licensing proceedings as a basis for disqualifying subsidiaries of AT & T and had been the basis for the Commission's action in adding issues against AT & T in comparative hearings. See 551 F.2d at 1290. Here, by contrast, since the company to which the adjudication was directed is no longer in business, the former competitors of that company, petitioners here, can point to no impact of the adjudication upon them.
 
 
 8
 There is no doubt that the Commission's action in this case was an adjudication and not a rulemaking. It is captioned "Declaratory Ruling," a category of action which, according to the Commission's rules, is taken "in accordance with section 5(d) of the Administrative Procedure Act," 47 C.F.R. Sec. 1.2 (1984). That subsection, now codified at 5 U.S.C. Sec. 554(e) (1982), pertains to adjudication.[3] The portion of the Declaratory Ruling entitled "Discussion" begins: "At issue before us is the status of the Auto Page service offering under federal and state regulatory schemes." 48 Fed.Reg. at 34,804. And the operative paragraph of the portion entitled "Conclusion" reads as follows:
 
 
 9
 Accordingly, it is hereby declared, That Auto Page, Inc. is duly licensed under the Communications Act of 1934 as amended to offer private land mobile radio service; that the offering which has been described herein is properly classified as private land mobile radio service within the scope of Section 331(c)(3) of the Communications Act of 1934 as amended in the Communications Amendments Act of 1982; and that any "entry" or "rate" regulation of such offering by a state or local government is without effect pursuant to Section 331(c)(3) of the amended Act.
 
 
 10
 Id. at 34,805-06. Since the company whose operations were approved by this adjudication has abandoned its business, the dispute between the competitors of that company and the Commission regarding the lawfulness of the approval is now moot; and no standing exists to litigate an abstract dispute over the Commission's reasoning.
 
 
 11
 As noted earlier, Judges Wright and Edwards would dispose of the present case on the authority of United States v. Munsingwear, Inc., supra, without discussion of standing to challenge precedential effect. It seems to me that question must be reached because of the fundamental difference between this suit challenging the lawfulness of agency action, and an appeal such as Munsingwear from a decision of a lower court. In the latter category of case, it is not the dispute between the appellant and the district court that we adjudicate and that forms the basis of our Article III jurisdiction (as is suggested by the fact that the district judge is not the appellee), but rather the same dispute between the parties to the case that formed the basis for the jurisdiction of the district court. As soon as that dispute terminates, therefore--whatever may be the precedential effect of the district court decision--our jurisdiction terminates as well. By contrast, when this court (or a district court) receives what may loosely be termed an "appeal" from agency action, it is not the matter that was before the agency which constitutes the Article III case or controversy, but rather the dispute between private parties and the agency concerning the lawfulness of the agency action.[4] Thus, the fact that the dispute which had prompted the agency action no longer exists does not automatically terminate the dispute before us and eliminate our jurisdiction--unless precedential effect of the agency action is no basis for complaint. Distinguishing the dispute before us from the dispute before the agency is of more than theoretical importance, since it can affect application of the Munsingwear rule requiring appellate courts to vacate judgments in cases mooted pending appeal. While that rule extends to agency orders as well as district court judgments under review, see A.L. Mechling Barge Lines, Inc. v. United States, supra, it does not apply to the former automatically, since what moots the dispute before us does not necessarily nullify the agency action. If, for example, it had been Southern and the other petitioners before us, rather than Auto Page, which went out of business, the dispute before us would just as effectively be mooted, but (since that is not the same matter as was before the agency) the agency action would continue to have present, concrete effect. In dismissing such a case as moot, we would assuredly not vacate the agency's approval of Auto Page's continuing operations.
 
 
 12
 * * *
 
 
 13
 In any case, all members of the court are agreed that the controversy before us is moot for a reason that deprives the agency action of all operative effect. Accordingly, we dismiss the petitions for review and vacate the declaratory ruling here under review. See Tennessee Gas Pipeline Co. v. FPC, supra.
 
 
 14
 So ordered.
 
 
 15
 Statement of Circuit Judge J. SKELLY WRIGHT:
 
 
 16
 I would dismiss this appeal as moot and vacate the agency ruling, for the reasons stated in United States v. Munsingwear, Inc., 340 U.S. 36, 71 S.Ct. 104, 95 L.Ed. 36 (1950), and A.L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 329, 82 S.Ct. 337, 340, 7 L.Ed.2d 317 (1961). See also Tennessee Gas Pipeline Co. v. FPC, 606 F.2d 1373, 1380-1383 (D.C.Cir.1979).
 
 HARRY T. EDWARDS, Circuit Judge, concurring:
 
 17
 I agree with the holding that, "[s]ince the company whose operations were approved by [the Commission's] adjudication has abandoned its business, the dispute between the competitors of that company and the Commission regarding the lawfulness of the approval is now moot." I also agree that, because the order of the Commission has been mooted pending appeal, we must vacate the declaratory ruling here under review. A.L. Mechling Barge Lines, Inc. v. United States, 368 U.S. 324, 329, 82 S.Ct. 337, 340, 7 L.Ed.2d 317 (1961); Tennessee Gas Pipeline Co. v. FPC, 606 F.2d 1373, 1380-83 (D.C.Cir.1979).
 
 
 18
 Given the present posture of this case, I find it unnecessary to ponder the abstract question whether a petitioner has standing to challenge an agency action on the basis of the "precedential effect of the agency's rationale in later adjudications." This question is not before us and, therefore, no answer is warranted.
 
 
 
 [1]
 47 U.S.C. Sec. 332(c)(3) provides:
 No State or local government shall have any authority to impose any rate or entry regulation upon any private land mobile service, except that nothing in this subsection may be construed to impair such jurisdiction with respect to common carrier stations in the mobile service.
 
 
 [2]
 47 U.S.C. Sec. 402(a) authorizes petitions for review, in the manner prescribed in chapter 158 of Title 28 of the United States Code, of all orders of the Commission pertaining to wire or radio communication except those appealable under 47 U.S.C. Sec. 402(b). We have jurisdiction over such petitions under 28 U.S.C. Sec. 2342 (1982), and venue lies in this court or in the Court of Appeals for the judicial circuit in which petitioner resides or has his principal place of business, 28 U.S.C. Sec. 2343. Each of the present petitioners also filed a separate "appeal" under 47 U.S.C. Sec. 402(b), which provides for review of certain categories of Commission orders pertaining to wire or radio communications only in this court. The order here at issue is not remotely within any of those categories. We can find no conceivable basis for the invocation of Sec. 402(b), except the fact that it is recited as an exception to Sec. 402(a). While protective filings by careful counsel are understandable, they should not be carried to the point of utter surplusage. On our own motion, we dismiss the Sec. 402(b) appeals
 
 
 [3]
 Subsection (e) of 5 U.S.C. Sec. 554, entitled "Adjudications," reads as follows:
 The agency, with like effect as in the case of other orders, and in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty.
 For purposes of this provision, "order" is defined as "the whole or a part of a final disposition ... of an agency in a matter other than rule making but including licensing." 5 U.S.C. Sec. 551(6). "Adjudication" is defined as "agency process for the formulation of an order." 5 U.S.C. Sec. 551(7).
 
 
 [4]
 That is why, when the petitioner is the losing party in a dispute adjudicated by the agency, it is the agency rather than the winning party that is the respondent. See, e.g., Democratic National Committee v. FCC, 717 F.2d 1471 (D.C.Cir.1983) (appeal from FCC adjudication of Democratic National Committee's fairness doctrine complaint against television networks). Often, in fact, an "appeal" can be taken where there was no dispute before the agency whatever--as could indeed have been the case here if Auto Page had sought and received the declaratory order without notification to Southern or LPSC (the informal adjudication requirements of the Administrative Procedure Act do not demand such notification). See, e.g., Shell Oil Co. v. Kreps, 445 F.Supp. 1128 (D.D.C.1978), rev'd on other grounds sub nom. Alaska Bulk Carriers, Inc. v. Kreps, 595 F.2d 814 (D.C.Cir.1979) (challenge to a decision of the Secretary of Commerce, unopposed at the agency level, to amend a construction-differential subsidy contract under the Merchant Marine Act)