**THE PEN, Plaintiff,**

v.

**DC RADIO ASSETS, LLC and Cumulus Media, Inc., Defendants.**

**CIVIL ACTION NO. 12-01798 (BJR)**

United States District Court, District of Columbia.

Signed 03/19/2014

---

Pen, West Hollywood, CA, pro se.

Jack McKay, Pillsbury Winthrop Shaw Pittman, LLP, Washington, DC, for Defendants.

## MEMORANDUM OPINION

## MEMORANDUM OPINION GRANTING DEFENDANTS' MOTION TO DISMISS [3]

BARBARA J. ROTHSTEIN, UNITED STATES DISTRICT JUDGE

### I. INTRODUCTION

This matter comes before the court on a Motion to Dismiss [3] ("Mot. Dismiss") brought by Defendants DC Radio Assets, LLC and Cumulus Media Inc. Plaintiff The Pen[1], proceeding *pro se*, claims that Defendants violated his First Amendment rights when Defendants refused to air an advertisement for Plaintiff's movie "The Last War Crime" on their AM radio station WMAL. Upon consideration of the parties' briefs, the relevant case law, and the entire record, the Court **GRANTS** Defendants' Motion to Dismiss.

### II. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

The following facts are derived from Plaintiff's complaint and are taken as true for the purposes of Defendants' Motion to Dismiss. Plaintiff wrote and directed the movie "The Last War Crime." First Amended Complaint ("Am. Compl.") at 2. The film deals with the decision by the United States to attack and invade Iraq in

2003. *Id.* at 3. Defendant Cumulus Media Inc. is the second largest private owner and operator of AM and FM radio stations in the U.S. *Id.* at 2. It owns Defendant DC Radio Assets, LLC, which owns and operates an AM radio station in the District of Columbia that uses the call sign WMAL. *Id.* at 2.

On or about February 1, 2012, Plaintiff contacted Kim Dawson, an account executive for WMAL, and made an advertising buy of 10 radio spots of 60 seconds duration each, for a total cost of $4,500. *Id.* at 3. The ads were to run during a WMAL program hosted by Sean Hannity. *Id.* at 3. On or about February 13, 2012, Plaintiff submitted a proposed finished and recorded audio ad, titled "Dick Cheney's Extraordinary Vacation," for the approval of WMAL. *Id.* at 3. Plaintiff alleges the spoken script of the ad was delivered in a "gently satirical manner," backed by music reminiscent of a game show, and was as follows:

> "This is your lucky day, Dick Cheney. You've won a fabulous vacation trip to sunny Spain. An extraordinary vacation. That's like extraordinary rendition, except without the torture. Yes, Dick Cheney, you'll fly coach class, because that's how we travel, to beautiful, war criminal prosecuting Spain. Black bag over your head optional. We might even have a special greeting committee of the Spanish judiciary to meet you at the airport, the minute you step off the plane. You'll be staying in tidy dormitory style accommodations, with self maid [sic] service, for the length of your stay, which may be quite extended depending on how your trial goes. So do let us know when you might need a ticket back. We'll see what we can do, unless other

---

1. "The Pen" is the plaintiff's own "full legal name" as a "natural person." Brief of Plaintiff in Opposition to Motion to Dismiss ("Pl.'s Opp'n") at 3.

countries want to extradite you first. Yes, an extraordinary vacation. All for you, Dick Cheney. For more information and details go to lastwarcrime.com, that's Last War Crime dot com. The Last War Crime, a soon to be released full length feature film. Last War Crime dot com."

*Id.* at 3-4.

Later that day, Kim Dawson reported back to Plaintiff that WMAL's General Sales Manager and Program Director had both rejected the ad on the grounds that it was "too controversial and offensive for many of our listeners." *Id.* at 4. Plaintiff later emailed Kim Dawson and asked, "Would it be fair to say your station is not interested in political sentiments of this kind?" *Id.* at 4. Kim Dawson responded back by email, "Yes. I would say this is a fair assessment." *Id.* at 4. According to Plaintiff, she further stated by email that the decision not to run the ad was a "local decision," but that it would be a "challenge" to get any station owned by Cumulus Media Inc. to run the ad. *Id.* at 4.

Plaintiff's complaint named WMAL and Cumulus Media Inc. as co-defendants. Complaint ("Compl.") at 1. Plaintiff's amended complaint reflects a stipulation between the parties to "substitute DC Radio Assets, LLC as a defendant in place of WMAL as the proper additional party." Am. Compl. at 2. Plaintiff's amended complaint requests the Court grant a permanent injunction restraining Defendants from refusing to accept advertisements for Plaintiff's movie, "The Last War Crime." Am. Compl. at 6. Plaintiff also requests the Court issue a declaratory judgment that Defendant's refusal to accept Plaintiff's advertisement for the movie, "The Last War Crime," was a violation of the First Amendment of the United States Constitution. Am. Compl. at 6.

Defendants ask this Court to dismiss Plaintiff's amended complaint (1) pursuant to Federal Rule of Civil Procedure 12(b)(6), (2) pursuant to the doctrine of exhaustion, or (3) pursuant to the doctrine of primary jurisdiction.

## III. DISCUSSION

### A. Legal Standard

Dismissal pursuant to Rule 12(b)(6) for "failure to state a claim upon which relief can be granted" is appropriate if "the plaintiff fails to plead enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (internal citations omitted). The Court may only grant dismissal if the facts alleged in the complaint do not "raise a right to relief above the speculative level." *Bell Atl. Corp.*, 550 U.S. at 555, 127 S.Ct. 1955. The Court must construe the complaint in the light most favorable to the non-moving party. *See Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994).

### B. Constitutional Issues

According to Plaintiff, there are two distinct constitutional issues raised by Defendants' conduct: (1) First, that 47 U.S.C. § 315(a) fails to provide for non-candidate policy speech the same protections as it provides for candidate speech, and (2) second, that it is a First Amendment violation *per se* for defendants to discriminate against advertisements for political reasons. Pl.'s Opp'n at 1.

Plaintiff's claims to relief do not rise above a speculative level. They would require the Court to: (1) interpret the First Amendment in a new and novel way; (2) expand the scope of Section 315 of the Federal Communications Act of 1934 ("The Communications Act"); or (3) distinguish the Supreme Court case *Columbia Broad-*

casting System, Inc. ("CBS") v. Democratic National Committee ("DNC"), 412 U.S. 94, 93 S.Ct. 2080, 36 L.Ed.2d 772 (1973). The Court declines to do any of these.

### 1. The First Amendment

▇▇ The First Amendment has never been read to require private parties to guarantee freedom of speech to other private parties. CBS, 412 U.S. at 113, 93 S.Ct. 2080; see also Levitch v. CBS, 495 F.Supp. 649, 656 (S.D.N.Y.1980), aff'd, 697 F.2d 495 (2d Cir.1983) ("[C]ases are legion that the First Amendment's prohibition against restrictions upon speech and the press is a restraint upon governmental action, not that of private persons.") (internal citations omitted). While it is true that in some circumstances a private actor can become so intertwined with the government that the broadcaster becomes a governmental actor for purposes of the First and Fourteenth Amendments, the instant case is not one of those circumstances. See Edmonson v. Leesville Concrete Co., Inc., 500 U.S. 614, 621, 111 S.Ct. 2077, 114 L.Ed.2d 660 (1991) (the test for when a private party becomes a governmental actor looks at "the extent to which the actor relies on governmental · assistance and benefits," "whether the actor is performing a traditional governmental function," and "whether the injury caused is aggravated in a unique way by the incidents of governmental authority.") (internal citations omitted). WMAL is a private radio station, and the mere fact that it is subject to extensive regulation by the Federal Communications Commission ("FCC") does not transform it into a governmental actor for First and Fourteenth Amendment purposes. See CBS, 412 U.S. at 119, 93 S.Ct. 2080 (the "First Amendment does not reach acts of private parties in every instance where the Congress or the Commission has merely permitted or failed to prohibit such acts").

As such, the Court declines to adopt Plaintiff's novel interpretation of the First Amendment.

### 2. Section 315 of the Communications Act

▇▇ Section 315(a) of the Communications Act, which codified portions of the Bipartisan Campaign Reform Act of 2002, provides that "if any [broadcaster] shall permit any person who is a legally qualified candidate for any public office to use a broadcasting station, he shall afford equal opportunities to all other such candidates for that office in the use of such broadcasting station." 47 U.S.C. § 315(a). The Section is considered a tacit Congressional endorsement of the Fairness Doctrine, as applied to political candidates. See Kathleen Ann Ruane, Cong. Research Serv., R40009, Fairness Doctrine: History and Constitutional Issues 3 (2011). The Fairness Doctrine was a FCC policy in effect from 1949 to 1987 that required television and radio stations to broadcast contrasting views in any discussion of controversial issues of public importance and to provide a right of reply to individuals who were attacked on the airwaves during such discussions. See Healy v. FCC, 460 F.2d 917, 917 (D.C.Cir.1972) (discussing the evolution of the Fairness Doctrine). Were the Court to expand the scope of Section 315(a) to cover non-candidate policy speech, Defendants would have a legal obligation to accept Plaintiff's advertisement for "The Last War Crime" because WMAL had previously broadcast non-candidate political speech from other parties. See Pl.'s Opp'n at 4 (explaining the scope of § 315).

What Plaintiff asks would require the Court to engage in legislative activity, a role for which courts are poorly suited. See, generally, Ayotte v. Planned Parenthood of N. New England, 546 U.S. 320, 329, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006)

("[W]e restrain ourselves from rewriting [a] law to conform it to constitutional requirements.").

### 3. *Columbia Broadcasting Systems, Inc. v. Democratic National Committee*

In *CBS v. DNC*, CBS refused to sell air time to the Business Executives' Move for Vietnam Peace for the purpose of expressing its views on the Vietnam conflict. The DNC, acting on behalf of the Business Executives, requested a declaratory ruling from the FCC that the Communications Act and the First Amendment precluded CBS from refusing to sell airtime to a group wishing to express its views on public issues. The FCC rejected the DNC's request for declaratory judgment. The D.C. Circuit reversed and remanded, and certiorari was granted. The Supreme Court, which presumed the continued existence of the Fairness Doctrine, discussed below, held that "neither the Communications Act nor the First Amendment require broadcasters to accept paid editorial advertisements." *CBS*, 412 U.S. at 94, 93 S.Ct. 2080. *CBS* made clear that the private actions of a broadcaster do not constitute government action subject to First Amendment restrictions. *See id.* The Plaintiff urges the Court to distinguish *CBS* on the grounds that it presumed the continued existence of the Fairness Doctrine, and to then find that Defendants have a legal obligation to accept Plaintiff's advertisement for "The Last War Crime."

The Court declines to do so. Although in *CBS* the Supreme Court presumed the continued existence of the Fairness Doctrine, its holding was premised on the fundamental inconsistency of the DNC's request for relief and the First Amendment protections enjoyed by private broadcasters. *CBS*, 412 U.S. at 94, 93 S.Ct. 2080. As the Court explained, "it would be anomalous for us to hold, in the name of promoting the constitutional guarantees of free expression, that the day-to-day editorial decisions of broadcast licensees are subject to the kind of restraints urged by respondents. To do so in the name of the First Amendment would be a contradiction." *CBS*, 412 U.S. at 120–21, 93 S.Ct. 2080. Plaintiff's constitutional claims do not rise above the speculative level and will be dismissed.

### B. Primary Jurisdiction

█ Plaintiff's claims could be construed as seeking to revive the Fairness Doctrine. That is a matter that involves telecommunications policy and is therefore within the primary jurisdiction of the FCC.

█ Primary jurisdiction arises where "'the courts have jurisdiction over the claim from the very outset but it is likely that the case will require resolution of issues which, under a regulatory scheme, have been placed in the hands of an administrative body.'" *Himmelman v. MCI Commc'n Corp.*, 104 F.Supp.2d 1, 4 (D.D.C.2000) (quoting *Total Telecomm. Servs., Inc. v. Am. Tel. & Tel. Co.*, 919 F.Supp. 472, 478 (D.D.C.1996), *aff'd*, 99 F.3d 448 (D.C.Cir.1996)). "The primary jurisdiction doctrine is premised on a desire for uniform outcomes and on the inherent advantage in allowing an agency . . . to apply its expert judgment to the issues in dispute." *Id.*

"The powers granted to the FCC are a reflection of Congress' intention that one governmental entity be vested with the responsibility of developing, coordinating and enforcing a uniform telecommunications policy." *Total Telecomm. Servs.*, 919 F.Supp. at 478 (citing *Chastain v. AT & T*, 351 F.Supp. 1320, 1322 (D.D.C.1972)). Those powers include the obligation to prescribe appropriate rules and regulations to carry out provisions of the Communications Act. *See* 47 U.S.C. § 303 (discussing the powers and duties of

Commission); 47 C.F.R. §§ 73.1941-44 (setting out political broadcasting rules). In accordance with those powers, the FCC has prescribed rules and regulations that confer upon licensees the responsibility for "the selection and presentation of program material over their stations, including advertising matter." *Gaffney Broad., Inc.*, 23 FCC 2d 912, 913 (1970); *see also Roy R. Russo, Esq.*, 5 FCC Rcd. 7586, 7587 (MMB 1990). WMAL, like all radio stations, is subject to these regulations.

In *Sofer v. United States*, a cable television station refused to sell commercial advertising time to the plaintiff. The U.S. District Court for the Eastern District of Virginia held that the FCC had primary jurisdiction because it had the regulatory authority to enforce the various "fairness" provisions of the Communications Act and to vindicate the public interest. *Sofer v. United States*, No. 94–CV–11822, 1995 WL 576833 (E.D.Va. June 7, 1995).

To the extent that Plaintiff's claims could be construed as involving telecommunications policy considerations concerning the public interest, the Communications Act has vested the FCC with the mandate to make those determinations. *See Total Telecomm. Servs.*, 919 F.Supp. at 478; *see also CBS*, 412 U.S. at 102, 93 S.Ct. 2080 (noting that "over the course of the past half century … Congress and [the FCC] have established a delicately balanced system of regulation intended to serve the interests of all concerned. The problems of regulation are rendered more difficult because the broadcast industry is dynamic in terms of technological change; solutions adequate a decade ago are not necessarily so now, and those acceptable today may well be outmoded 10 years hence").

## IV. CONCLUSION

For the foregoing reasons, the Court grants Defendants' Motion to Dismiss [3]. An Order consistent with this memorandum opinion shall issue separately.