Planned Parenthood v. AG                CV-03-491-JD  12/29/03  P
                    UNITED STATES DISTRICT COURT FOR THE
                           DISTRICT OF NEW HAMPSHIRE


Planned Parenthood of
Northern New England,
Concord Feminist Health
Center, Feminist Health
Center of Portsmouth, and
Wayne Goldner, M.D.

         v.                                Civil No. 03-491-JD
                                           Opinion No. 2003 DNH 222
Peter Heed, Attorney General
of New Hampshire


                              O R D E R


     The plaintiffs bring an action pursuant to 42 U.S.C. § 1983,

seeking to have the Parental Notification Prior to Abortion Act

("Act"),[1] passed by the New Hampshire legislature, declared

unconstitutional.  The plaintiffs also seek an injunction to

prevent enforcement of the Act.  The Attorney General contends

that the Act is constitutional and objects to an injunction.

     At the plaintiff's request, this case has been given

expedited consideration by the court in view of the fact that the

Act is due to become effective on December 31, 2003.

_____

        [1]2003 N.H. Laws ch. 173, effective date, December 31, 2003,
to be codified at N.H. Rev. Stat. Ann. ("RSA") § 132:24-:28.

After carefully reviewing the provisions of the Act and the applicable United States Supreme Court precedents, the court has concluded that the Act fails to meet the constitutional requirements as determined by the United States Supreme Court. Therefore, the Act cannot be enforced.

Background

In June of 2003, the New Hampshire Senate and House of Representatives passed "AN ACT requiring parental notification before abortions may be performed on unemancipated minors." The Act defines "abortion" as:

> the use or prescription of any instrument, medicine, drug, or any other substance or device intentionally to terminate the pregnancy of a female known to be pregnant with an intention other than to increase the probability of a live birth, to preserve the life or health of the child after live birth, or to remove an ectopic pregnancy or the products from a spontaneous miscarriage.

RSA 132:24, I (eff. 12/31/03). The central provision of the Act is a prohibition on abortion in the absence of parental notification:

> No abortion shall be performed upon an unemancipated minor or upon a female for whom a guardian or conservator has been appointed pursuant to RSA 464-A because of a finding of incompetency, until at least 48 hours after written notice of the pending abortion has been delivered in the manner specified in paragraphs II and III.

2

RSA 132:25, I. Paragraph II requires written notice to be addressed to the parent at the parent's "usual place of abode" and to be "delivered personally by the physician or an agent." Paragraph III provides an alternative to allow notice by certified mail, return receipt requested, with delivery restricted to the addressee.

Notice is not required if the physician "certifies in the pregnant minor's medical record that the abortion is necessary to prevent the minor's death and there is insufficient time to provide the required notice; or [] [t]he person or persons who are entitled to notice certify in writing that they have been notified." RSA 132:26,I. If the pregnant minor does not want to notify a parent, she may, alternatively, seek court authorization for the abortion. RSA 132:26, II. In that case, the court is required to hold a hearing and then determine whether "the pregnant minor is mature and capable of giving informed consent to the proposed abortion" or "whether the performance of an abortion upon her without notification of her parent, guardian, or conservator would be in her best interests." Id. Such court proceedings "shall be confidential and shall be given such precedence over other pending matters so that the court may reach a decision promptly and without delay so as to serve the best interests of the pregnant minor." RSA 132:26,II(b).

3

Violation of the Act carries penalties. "Performance of an abortion in violation of this subdivision shall be a misdemeanor and shall be grounds for a civil action by a person wrongfully denied notification." RSA 132:27. Liability may be avoided if the person who performed the abortion can establish "by written evidence that the person relied upon evidence sufficient to convince a careful and prudent person that the representations of the pregnant minor regarding the information necessary to comply with this section are bone [sic] fide and true, or if the person has attempted with reasonable diligence to deliver notice, but has been unable to do so." Id.

The plaintiffs simultaneously filed their complaint and a motion for a preliminary injunction to prevent the Act from being enforced once it becomes effective on December 31, 2003. The Attorney General filed an objection, and the plaintiffs filed a reply. No surreply was filed. The parties have agreed that the court may decide the plaintiffs' requests for a declaratory judgment and permanent injunctive relief on the merits based on their present filings.

## Discussion

The plaintiffs contend that the Act is unconstitutional because it lacks an exception to the parental notice requirement in circumstances when the delay would threaten the health of the pregnant minor. They also contend that the Act's exception to prevent death is unconstitutionally narrow and that the confidentiality requirement for court proceedings is insufficient. The Attorney General argues that a health exception is not constitutionally required in a parental notification law, that either the judicial bypass or other New Hampshire statutes adequately protect the health of a pregnant minor, that the Act would not be applied to physicians who act in good faith, and that the confidentiality provision is sufficient.

## I. Declaratory Judgment

Pursuant to 28 U.S.C. § 2201(a), the court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." The plaintiffs seek a declaration that the Act is unconstitutional on its face.

The parties dispute the appropriate standard for evaluating a facial challenge to the validity of a state law regulating abortion. When plaintiffs bring a facial constitutional

5

challenge to state law, they ordinarily must show that "'no set of circumstances exists under which the Act would be valid.'" Pharm. Res. & Mfrs. of Am. v. Concannon, 249 F.3d 66, 77 (1st Cir. 2001) (quoting United States v. Salerno, 481 U.S. 739, 745 (1987)), aff'd sub nom Pharm. Research & Mfrs. of Am. v. Walsh, 538 U.S. 644 (2003). That high hurdle, however, applies only when the plaintiffs challenge a state law "that does not regulate constitutionally protected conduct." Donovan v. City of Haverhill, 311 F.3d 74, 77 (1st Cir. 2002).

In Casey, the Court considered the facial constitutionality of a Pennsylvania law that imposed conditions on performing abortions for both adult and minor patients and, without mentioning Salerno, applied a standard of whether the challenged law imposes an "undue burden" or "will operate as a substantial obstacle to a woman's choice to undergo an abortion." Planned Parenthood of Southeastern Pa. v. Casey, 505 U.S. 833, 874, 877 & 895 (1992). In Stenberg v. Carhart, 530 U.S. 914, 921 (2000), the Court concluded that a Nebraska abortion statute was unconstitutional, after applying a three level test, including the "undue burden" standard, also without mentioning Salerno.

The First Circuit has not addressed the question of whether the Salerno standard applies in the context of abortion

6

legislation.[2]  Several other courts have concluded, however, that
Casey and Stenberg provide the governing standard and that the
Salerno standard does not apply.  See, e.g., A Woman's Choice-
East Side Women's Clinic v. Newman, 305 F.3d 684, 687 (7th Cir.
2002), cert. denied A Woman's Choice-East Side Women's Clinic v.
Brizzi, 537 U.S. 1192 (2003); Planned Parenthood of the Rocky
Mts. Servs. v. Owens, 287 F.3d 910, 917 (10th Cir. 2002); Planned
Parenthood of Cent. N.J. v. Farmer, 220 F.3d 127, 142-43 (3d Cir.
2000); Planned Parenthood of Southern Ariz. v. Lawall, 180 F.3d
1022, 1025-26 (9th Cir. 1999), amended on denial of rehear'g, 193
F.3d 1042 (9th Cir. 1999); R.I. Med. Soc'y v. Whitehouse, 66 F.
Supp. 2d 288, 312-13 (D.R.I. 1999) (citing additional cases).
The Fourth and Fifth Circuits alone have chosen to apply Salerno
in the context of abortion legislation.  See Manning v. Hunt, 119
F.3d 254, 269 (4th Cir. 1997) (noting circuit split and citing
cases).  This court is satisfied that the Casey and Stenberg
standard applies in the context of abortion legislation, as is
well documented by a majority of courts that have considered the
question.  Therefore, that standard will be followed in this

---

[2]However, having limited Salerno to cases that do not
involve constitutionally protected conduct, it appears likely
that the First Circuit would not apply Salerno in cases involving
laws restricting access to abortion services.  See Donovan, 311
F.3d at 77.

7

case.

The United States Supreme Court decided in 1973 that the "right of privacy, whether it be founded in the Fourteenth Amendment's concept of personal liberty and restrictions upon state action, as we feel it is, or, as the District Court determined, in the Ninth Amendment's reservation of rights to the people, is broad enough to encompass a woman's decision whether or not to terminate her pregnancy." Roe v. Wade, 410 U.S. 113, 153 (1973). In Roe, the Supreme Court held that a Texas criminal statute which excepted "only a lifesaving procedure on behalf of the mother, without regard to pregnancy stage and without recognition of the other interests involved, is violative of the Due Process Clause of the Fourteenth Amendment." Id. at 164. The Supreme Court has also held that minors, as well as adults, have a constitutional right to choose an abortion. See Bellotti v. Baird, 443 U.S. 622, 633, 642 (1979); Planned Parenthood of Mo. v. Danforth, 428 U.S. 52, 72-5 (1976). During the three decades that have passed since Roe v. Wade, the Supreme Court and lower federal courts and state courts have continued to address issues arising from the recognition of a woman's constitutional right to decide whether to terminate a pregnancy. See, e.g., Stenberg, 530 U.S. at 920; Casey, 505 U.S. at 843-44; Owens, 287 F.3d at 917; Humphreys v. Clinic for Women, Inc., 796 N.E.2d 247

8

(Ind. 2003); <u>Simat Corp. v. Ariz. Health Care Cost Containment Sys.</u>, 56 P.3d 28 (Ariz. 2002).

The right to choose to terminate a pregnancy may be subject to limitation, the degree of which depends upon the stage of the pregnancy and the state's interest both in the health of the mother and in promoting "the potentiality of human life." <u>Roe</u>, 410 U.S. at 164. "[B]efore 'viability . . . the woman has a right to choose to terminate her pregnancy.'" <u>Stenberg</u>, 530 U.S. at 921 (quoting <u>Casey</u>, 505 U.S. at 870)). "'[A] law designed to further the State's interest in fetal life which imposes an undue burden on the woman's decision before fetal viability' is unconstitutional[,] . . . [and] [a]n 'undue burden is . . . shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus.'" <u>Id.</u> After viability of the fetus, the state may "'"regulate, and even proscribe, abortion except where it is necessary, in appropriate medical judgment, for the preservation of the life or health of the mother."'" <u>Id.</u> (quoting <u>Casey</u>, 505 U.S. at 879, <u>quoting Roe</u>, 410 U.S. at 164-65).

The Supreme Court has upheld state laws requiring parental notification prior to performing abortions on minors. <u>See</u> <u>Lambert v. Wicklund</u>, 520 U.S. 292 (1997); <u>Casey</u>, 505 U.S. at 899.

9

In Lambert, cited by the Attorney General, the Court rejected the plaintiff's argument that the judicial bypass procedure, incorporated in the state law, was deficient because it required a showing that parental notification was not in the minor's best interests rather than a showing that an abortion without notification was in her best interest. 520 U.S. at 294. However, the Lambert Court did not consider the issues that have been raised in this case.

A. Health Exception

In Casey, the Supreme Court considered five provisions of Pennsylvania law pertaining to abortion. 505 U.S. at 844. One of those provisions required a minor to obtain the informed consent of a parent before the procedure but also provided a judicial bypass option and an exception for a medical emergency. Id. The plaintiffs challenged the consent provision on the single ground that it required informed parental consent. Id. Given the limited challenge and the judicial bypass and emergency exceptions to the consent requirement, the Court concluded that the provision passed constitutional muster. Id. at 899.

The Supreme Court later reiterated and clarified Casey, a plurality opinion, in Stenberg, stating that "the governing standard requires an exception 'where it is necessary, in

10

appropriate medical judgment for the preservation of the life or health of the mother.'"[3] Stenberg, 530 U.S. at 931 (quoting Casey, 505 U.S. at 879). A health exception is required at any stage of a pregnancy because "a State may promote but not endanger a woman's health when it regulates the methods of abortion." Id.

The Tenth Circuit considered the constitutionality of a Colorado parental notification law, which is similar to the New Hampshire Act, under Roe, Casey, and Stenberg. Owens, 287 F.3d at 915-16. The court concluded that because circumstances exist in which a pregnancy complication could seriously threaten a pregnant minor's health, the Colorado law, which lacked a health exception, would "infringe[] on the ability of pregnant women to protect their health."[4] Id. at 920. The court held that the

_____

[3]In addition, the Court noted that a law regulating a woman's access to abortion which "applies both previability and postviability aggravates the constitutional problem presented. The State's interest in regulating abortion previability is considerably weaker than postviability." Stenberg, 530 U.S. at 930.

[4]In this case, the parties do not dispute that pregnant minors, subject to the requirements of the Act, could experience complications in their pregnancies that would endanger their health. Dr. Wayne Goldner, who is a plaintiff in this case, is an obstetrician and gynecologist practicing in Manchester, New Hampshire, and is board certified by the American Board of Obstetricians and Gynecologists and a fellow in the American College of Obstetricians and Gynecologists. Dr. Goldner provided

11

Colorado law was unconstitutional "because it fails to provide a health exception as required by the Constitution of the United States." Id. at 926.

Although the New Hampshire Act includes an exception to the notification requirement when an abortion is necessary to prevent the death of a pregnant minor, it does not include an exception to protect her health short of fatality. Therefore, on its face, the Act does not comply with the constitutional requirement that laws restricting a woman's access to abortion must provide a health exception.[5]

_____

his declaration that describes medical complications which may occur during pregnancy putting pregnant minors at risk and requiring prompt or immediate termination of the pregnancy.

[5]To the extent that the Attorney General argues that a health exception is not constitutionally required in parental notification statutes, despite Stenberg and Casey, that argument lacks merit. Rust v. Sullivan, 500 U.S. 173 (1991), and H.L. v. Matheson, 450 U.S. 398 (1981), cited by the Attorney General, do not support that argument. The Utah statute at issue in Matheson required parental notification "if possible" and was challenged for an unconstitutional violation of the right to privacy, not for lack of a health exception. See id. at 407. Rust addressed the constitutionality of a restriction on doctors receiving federal subsidies that precluded advice on abortion as a family planning method. 500 U.S. at 179-80. The Court upheld the challenged regulations explaining that while abortion could not be counseled as a means of family planning under the regulations, because it was beyond the scope of the funded project, the regulations did not preclude referral of women for abortions for purposes other than family planning, such as in medical emergencies. Id. at 195-96.

The Attorney General contends that other New Hampshire statutes would provide adequate protection for a pregnant minor's health. The Attorney General cites RSA 153-A:18, which exempts a health care provider from civil liability for failure to obtain consent for emergency medical care, and RSA 627:6,VII(b), which allows certain Department of Corrections medical care providers to use force to provide treatment in an emergency. Those statutes do not address the need for a health exception in the Act. RSA 153-A:18 provides only an exemption from civil liability for lack of consent while the Act requires parental notification, not consent, prior to medical care and imposes both criminal and civil liability for violations. RSA 627:6,VII(b) pertains only to Department of Corrections medical care providers in unusual circumstances that are irrelevant to the Act. Therefore, the cited statutes do not provide an alternative health exception that is required for the Act to be constitutional.

The Attorney General also argues that the judicial bypass provision of the Act would allow an abortion, without notification, to protect the health of a pregnant minor. Even with the provisions for expediting such proceedings, the judicial bypass process necessarily delays an abortion in a health

13

emergency.[6]  Dr. Goldner states in his declaration, which is not opposed by the Attorney General, that certain medical conditions during pregnancy require immediate abortion to protect the health of the mother and that any delay would jeopardize her health. The Attorney General has not explained how the judicial bypass provision would address the need for an immediate abortion to protect the health of the mother, and the provision on its face is insufficient to meet such a need.  Therefore, the judicial bypass process does not save the Act from the lack of a constitutionally required health exception.


B.  Death Exception

The plaintiffs contend that the death exception in the Act is unconstitutionally narrow.  The plaintiffs challenge the condition that the "attending abortion provider certifies in the pregnant minor's medical record that the abortion is necessary to prevent the minor's death and there is insufficient time to

_____

[6]Pertaining to the speed of judicial proceedings under the Act, the judicial bypass provision requires only that those proceedings "shall be given precedence over other pending matters so that the court may reach a decision promptly and without delay so as to serve the best interests of the pregnant minor," that the court must rule within seven calendar days, that a pregnant minor would have access to the courts twenty-four hours a day and seven days each week, and that appeals would be expedited.  RSA 132:26(b) & (c).

14

provide the required notice." RSA 132:26, I(a). Dr. Goldner states in his declaration, which is unopposed, that physicians cannot predict the course of medical complications with sufficient precision to comply with that requirement. In addition, the plaintiffs argue that abortion may at times not be the only treatment available, as the use of the limiting word "necessary" implies, but nevertheless would be the safest and most medically appropriate method to treat the patient's condition. Further, the plaintiffs contend that the statute violates physicians' due process rights by failing to allow them to rely on their good faith medical judgment in treating their patients.

In response, the Attorney General concedes that the death exception must be construed to include a scienter requirement to avoid constitutional infirmity. See Colautti v. Franklin, 439 U.S. 379, 395 (1979). The court, however, is not authorized to construe a state statute to include unwritten limitations "unless such a construction is reasonable and readily apparent." Stenberg, 530 U.S. at 944 (internal quotation marks omitted). The implied scienter requirement suggested by the Attorney General, that physicians who make a good faith, objectively reasonable effort to comply with the Act would not be subject to prosecution, is neither reasonable nor readily apparent from the

15

context of RSA 132:26,I(a).  In addition, even if that construction were appropriate, it would not be likely to save the death exception since the same language, expressly included in an abortion statute, has been held by the Sixth Circuit to be unconstitutionally vague and therefore not a scienter requirement at all.  See, e.g., Women's Med. Prof'l Corp. v. Voinovich, 130 F.3d 187, 203-10 (6th Cir. 1997).

Therefore, the death exception provided in RSA 132:26,I(a) is unconstitutional.

C.  Confidentiality

A judicial bypass procedure, included as part of a parental notification law, must protect the anonymity of the minor who is seeking judicial authorization for an abortion.  Bellotti, 443 U.S. at 644.  Anonymity is required because laws regulating abortion that "raise the specter of public exposure and harassment of women who choose to exercise their personal, intensely private, right, with their physician, to end a pregnancy . . . pose an unacceptable danger of deterring the exercise of that right, and must be invalidated."  Thornburgh v. Am. Coll. of Obstetricians & Gynecologists, 476 U.S. 747, 767 (1986), overruled on other grounds by Casey, 505 U.S. 833.  In this context, "[c]onfidentiality differs from anonymity, but we

16

do not believe that the distinction has constitutional significance." Ohio v. Akron Ctr. for Reprod. Health, 497 U.S. 502, 513 (1990). The Supreme Court, however, has "refuse[d] to base a decision on the facial validity of a statute on the mere possibility of unauthorized, illegal disclosure by state employees." Id.

RSA 132:26, II(b) provides only that court proceedings under that chapter "shall be confidential." The plaintiffs argue that the lack of specificity makes the statute insufficient to comply with the constitutionally mandated confidentiality requirement. The Attorney General defends the confidentiality provision, contending that it is constitutionally sufficient.

As might be expected, courts applying Bellotti and Akron have come to differing conclusions about the sufficiency of confidentiality provisions in similar contexts. See, e.g., Planned Parenthood of S. Ariz. v. Lawall, 307 F.3d 783, 787-89 (9th Cir. 2002); Planned Parenthood of the Blue Ridge v. Camblos, 155 F.3d 352, 379-80 (4th Cir. 1998). The confidentiality requirement in the New Hampshire Act does raise a constitutional question. However, in view of the fact that the Act is otherwise unconstitutional, the court declines to rule on the facial validity of the confidentiality provision at this time.

17

D. Severability

The Attorney General contends that if the court were to find parts of the Act unconstitutional, then the severability provision of the Act, RSA 132:28, should be invoked and the unconstitutional parts of the Act should be severed from the remainder. The lack of a health exception renders the entire Act unconstitutional and, therefore, severing parts would not remedy that deficiency. Similarly, severing the constitutionally deficient death exception from the remainder of the Act would add to its infirmity, due to the complete absence of a death exception to the parental notification requirement. Therefore, the severability clause is of no use in these circumstances.

E. Declaratory Judgment

For the foregoing reasons, the Act, to be codified at RSA 132:24 through RSA 132:28, is declared to be unconstitutional.

II. Injunction

The plaintiffs seek an injunction to prevent enforcement of the Act upon its effective date, December 31, 2003, and thereafter. The Attorney General opposes an injunction.

"In order to issue a permanent injunction, a district court typically must find that (1) the plaintiff has demonstrated

18

actual success on the merits of its claims; (2) the plaintiff would be irreparably injured in the absence of injunctive relief; (3) the harm to the plaintiff from defendant's conduct would exceed the harm to the defendant accruing from the issuance of an injunction; and (4) the public interest would not be adversely affected by an injunction." United States v. Mass. Water Res. Auth., 256 F.3d 36, 51 n.15 (1st Cir. 2001). Here, the plaintiffs have demonstrated actual success by showing that the Act is unconstitutional, entitling them to a declaratory judgment. In the particular circumstances of a case challenging the constitutionality of abortion legislation, "a conclusion that a particular requirement is probably unconstitutional necessarily entails a decision as to the other preliminary injunction criteria as well." Planned Parenthood League of Mass. v. Bellotti, 641 F.2d 1006, 1023 (1st Cir. 1981). The same is true in the context of a permanent injunction.

Denying the requested injunction to bar enforcement of the Act "may result in other women not having abortions that they would otherwise have had" but for the unconstitutional Act. Id. Dr. Goldner states in his declaration that the lack of a health exception and the narrow death exception put pregnant minors at substantial risk if the Act were enforced. The balance between the state's interest in "the potentiality of human life" and the

plaintiffs' interest in protecting the health of pregnant minors must necessarily be struck in favor of the plaintiffs.  See Stenberg, 530 U.S. at 930.  Although an injunction would negatively affect the benefits of involving parents in a pregnant minor's decision whether or not to terminate her pregnancy, the public interest in the health of pregnant minors under emergency circumstances would be protected by an injunction.  Therefore, on balance, a permanent injunction against enforcement of the Act is appropriate in this case.


## Conclusion

For the foregoing reasons, the plaintiffs' motion for an injunction (document no. 6) is subsumed into the plaintiffs' request for a permanent injunction, which is granted.  The plaintiffs' request in the complaint for a declaratory judgment is also granted.  The Parental Notification Prior to Abortion Act, 2003 N.H. Laws ch. 173, effective date, December 31, 2003, to be codified at RSA 132:24-:28, is unconstitutional for the reasons previously stated.

20

Injunction Order

The Attorney General of the State of New Hampshire, and those acting pursuant to and under his direction and authority, are hereby enjoined from enforcing the Parental Notification Prior to Abortion Act, 2003 N.H. Laws ch. 173, to be codified at RSA 132:24-28, on its effective date or at any time thereafter.

The clerk of court shall enter judgment accordingly.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

December 29, 2003

cc:   Jennifer Dalven, Esquire
      Martin P. Honigberg, Esquire
      Dara Klassel, Esquire
      Daniel J. Mullen, Esquire
      Lawrence A. Vogelman, Esquire