(Slip Opinion) OCTOBER TERM, 2005 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## AYOTTE, ATTORNEY GENERAL OF NEW HAMPSHIRE *v.* PLANNED PARENTHOOD OF NORTHERN NEW ENGLAND ET AL.

### CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

No. 04–1144.   Argued November 30, 2005—Decided January 18, 2006

New Hampshire's Parental Notification Prior to Abortion Act, in relevant part, prohibits physicians from performing an abortion on a pregnant minor until 48 hours after written notice of such abortion is delivered to her parent or guardian. The Act does not require notice for an abortion necessary to prevent the minor's death if there is insufficient time to provide notice, and permits a minor to petition a judge to authorize her physician to perform an abortion without parental notification. The Act does not explicitly permit a physician to perform an abortion in a medical emergency without parental notification. Respondents, who provide abortions for pregnant minors and expect to provide emergency abortions for them in the future, filed suit under 42 U. S. C. §1983, claiming that the Act is unconstitutional because it lacks a health exception and because of the inadequacy of the life exception and the judicial bypass' confidentiality provision. The District Court declared the Act unconstitutional and permanently enjoined its enforcement, and the First Circuit affirmed.

*Held:* If enforcing a statute that regulates access to abortion would be unconstitutional in medical emergencies, invalidating the statute entirely is not always necessary or justified, for lower courts may be able to render narrower declaratory and injunctive relief. Pp. 4–10.

   (a) As the case comes to this Court, three propositions are established. First, States have the right to require parental involvement when a minor considers terminating her pregnancy. Second, a State may not restrict access to abortions that are "'necessary, in appropriate medical judgment for preservation of the life or health of the

mother.'" *Planned Parenthood of Southeastern Pa.* v. *Casey,* 505 U. S. 833, 879 (plurality opinion). Third, New Hampshire has not taken issue with the case's factual basis: In a very small percentage of cases, pregnant minors need immediate abortions to avert serious and often irreversible damage to their health. New Hampshire has conceded that, under this Court's cases, it would be unconstitutional to apply the Act in a manner that subjects minors to significant health risks. Pp. 4–6.

(b) Generally speaking, when confronting a statute's constitutional flaw, this Court tries to limit the solution to the problem, preferring to enjoin only the statute's unconstitutional applications while leaving the others in force, see *United States* v. *Raines,* 362 U. S. 17, 20–22, or to sever its problematic portions while leaving the remainder intact, *United States* v. *Booker,* 543 U. S. 220, 227–229. Three interrelated principles inform the Court's approach to remedies. First, the Court tries not to nullify more of a legislature's work than is necessary. Second, mindful that its constitutional mandate and institutional competence are limited, the Court restrains itself from "rewrit[ing] state law to confirm it to constitutional requirements." *Virginia* v. *American Booksellers Assn., Inc.,* 484 U. S. 383, 397. Third, the touchstone for any decision about remedy is legislative intent. After finding an application or portion of a statute unconstitutional, the Court must ask: Would the legislature have preferred what is left of its statute to no statute at all? See generally, *e.g., Booker, supra,* at 227. Here, the courts below chose the most blunt remedy—permanently enjoining the Act's enforcement and thereby invalidating it entirely. They need not have done so. In *Stenberg* v. *Carhart,* 530 U. S. 914—where this Court invalidated Nevada's "partial birth abortion" law in its entirety for lacking a health exception—the parties did not ask for, and this Court did not contemplate, relief more finely drawn, but here New Hampshire asked for and respondents recognized the possibility of a more modest remedy. Only a few applications of the Act would present a constitutional problem. So long as they are faithful to legislative intent, then, in this case the lower courts can issue a declaratory judgment and an injunction prohibiting the Act's unconstitutional application. On remand, they should determine in the first instance whether the legislature intended the statute to be susceptible to such a remedy. Pp. 6–10.

(c) Because an injunction prohibiting unconstitutional applications or a holding that consistency with legislative intent requires invalidating the statue *in toto* should obviate any concern about the Act's life exception, this Court need not pass on the lower courts' alternative holding. If the Act survives in part on remand, the Court of Appeals should address respondents' separate objection to the judicial

Syllabus

bypass' confidentiality provision. P. 10.

390 F. 3d 53, vacated and remanded.

O'CONNOR, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

No. 04–1144

KELLY A. AYOTTE, ATTORNEY GENERAL OF NEW HAMPSHIRE, PETITIONER *v.* PLANNED PARENTHOOD OF NORTHERN NEW ENGLAND ET AL.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT

[January 18, 2006]

JUSTICE O'CONNOR delivered the opinion of the Court.

We do not revisit our abortion precedents today, but rather address a question of remedy: If enforcing a statute that regulates access to abortion would be unconstitutional in medical emergencies, what is the appropriate judicial response? We hold that invalidating the statute entirely is not always necessary or justified, for lower courts may be able to render narrower declaratory and injunctive relief.

I

A

In 2003, New Hampshire enacted the Parental Notification Prior to Abortion Act. N. H. Rev. Stat. Ann. §§132:24–132:28 (Supp. 2004). The Act prohibits physicians from performing an abortion on a pregnant minor (or a woman for whom a guardian or conservator has been appointed) until 48 hours after written notice of the pending abortion is delivered to her parent or guardian. §132:25(I). Notice may be delivered personally or by

certified mail. §§132:25(II), (III). Violations of the Act are subject to criminal and civil penalties. §132:27.

The Act allows for three circumstances in which a physician may perform an abortion without notifying the minor's parent. First, notice is not required if "[t]he attending abortion provider certifies in the pregnant minor's record that the abortion is necessary to prevent the minor's death and there is insufficient time to provide the required notice." §132:26(I)(a). Second, a person entitled to receive notice may certify that he or she has already been notified. §132:26(I)(b). Finally, a minor may petition a judge to authorize her physician to perform an abortion without parental notification. The judge must so authorize if he or she finds that the minor is mature and capable of giving informed consent, or that an abortion without notification is in the minor's best interests. §132:26(II). These judicial bypass proceedings "shall be confidential and shall be given precedence over other pending matters so that the court may reach a decision promptly and without delay," and access to the courts "shall be afforded [to the] pregnant minor 24 hours a day, 7 days a week." §§132:26(II)(b), (c). The trial and appellate courts must each rule on bypass petitions within seven days. *Ibid.*

The Act does not explicitly permit a physician to perform an abortion in a medical emergency without parental notification.

B

Respondents are Dr. Wayne Goldner, an obstetrician and gynecologist who has a private practice in Manchester, and three clinics that offer reproductive health services. All provide abortions for pregnant minors, and each anticipates having to provide emergency abortions for minors in the future. Before the Act took effect, respondents brought suit under 42 U. S. C. §1983, alleging that the Act is unconstitutional because it fails "to allow a

physician to provide a prompt abortion to a minor whose health would be endangered" by delays inherent in the Act. App. 10 (Complaint, ¶24). Respondents also challenged the adequacy of the Act's life exception and of the judicial bypass' confidentiality provision.

The District Court declared the Act unconstitutional, see 28 U. S. C. §2201(a), and permanently enjoined its enforcement. It held, first, that the Act was invalid for failure "on its face . . . to comply with the constitutional requirement that laws restricting a woman's access to abortion must provide a health exception." *Planned Parenthood of Northern New Eng.* v. *Heed,* 296 F. Supp. 2d 59, 65 (NH 2003). It also found that the Act's judicial bypass would not operate expeditiously enough in medical emergencies. In the alternative, the District Court held the Act's life exception unconstitutional because it requires physicians to certify with impossible precision that an abortion is "necessary" to avoid death, and fails to protect their good faith medical judgment.

The Court of Appeals for the First Circuit affirmed. Citing our decisions in *Stenberg* v. *Carhart*, 530 U. S. 914, 929–930 (2000), *Planned Parenthood of Southeastern Pa.* v. *Casey,* 505 U. S. 833, 879 (1992) (plurality opinion), and *Roe* v. *Wade,* 410 U. S. 113, 164–165 (1973), it observed: "Complementing the general undue burden standard [for reviewing abortion regulations], the Supreme Court has also identified a specific and independent constitutional requirement that an abortion regulation must contain an exception for the preservation of the pregnant woman's health." *Planned Parenthood of Northern New Eng.* v. *Heed,* 390 F. 3d 53, 58 (2004). It went on to conclude that the Act is unconstitutional because it does not contain an explicit health exception, and its judicial bypass, along with other provisions of state law, is no substitute. The Court of Appeals further found the Act unconstitutional because, in its view, the life exception forces physicians to

gamble with their patients' lives by prohibiting them from performing an abortion without notification until they are certain that death is imminent, and is intolerably vague. Because the district and appellate courts permanently enjoined the Act's enforcement on the basis of the above infirmities, neither reached respondents' objection to the judicial bypass' confidentiality provision.

We granted certiorari, 544 U. S. __ (2005), to decide whether the courts below erred in invalidating the Act in its entirety because it lacks an exception for the preservation of pregnant minors' health. We now vacate and remand for the Court of Appeals to reconsider its choice of remedy.

## II

As the case comes to us, three propositions—two legal and one factual—are established. First, States unquestionably have the right to require parental involvement when a minor considers terminating her pregnancy, because of their "strong and legitimate interest in the welfare of [their] young citizens, whose immaturity, inexperience, and lack of judgment may sometimes impair their ability to exercise their rights wisely." *Hodgson* v. *Minnesota,* 497 U. S. 417, 444–445 (1990) (opinion of STEVENS, J.).[1]     Accordingly, we have long upheld state parental

—————————

[1] Forty-four States, including New Hampshire, have parental involvement (that is, consent or notification) laws. Thirty-eight of those laws have explicit exceptions for health or medical emergencies. Ala. Code §26–21–5 (1992); Alaska Stat. §18.16.060 (2004); Ariz. Rev. Stat. Ann. §36–2152(G)(2) (West 2003); Ark. Code Ann. §§20–16–802(2), 20–16–805(1) (Supp. 2005); Cal. Health & Safety Code Ann. §123450 (West 1996); Colo. Rev. Stat. §12–37.5–103(5) (2004); Del. Code Ann., Tit. 24, §§1782(d), 1787 (1997); Fla. Stat. Ann. §§390.01114(2)(d), (3)(b) (West Supp. 2006); Ga. Code Ann. §15–11–116 (2005); Idaho Code §18–609A(1)(a)(v) (Lexis 2005); Ill. Comp. Stat., ch. 750, §70/10 (West 2004); Ind. Code §16–34–2–4 (West 2004); Iowa Code §135L.3 (2005); Kan. Stat. Ann. §65–6705(j)(1)(B) (2002); Ky. Rev. Stat. Ann. §§311.720, 311.732 (West Supp. 2005); La. Stat. Ann. §40:1299.35.12 (West Supp.

involvement statutes like the Act before us, and we cast no doubt on those holdings today. See, *e.g.*, *Lambert* v. *Wicklund*, 520 U. S. 292 (1997) *(per curiam); Casey, supra*, at 899 (joint opinion); *Ohio* v. *Akron Center for Reproductive Health*, 497 U. S. 502, 510–519 (1990); *Hodgson*, 497 U. S., at 461 (O'CONNOR, J., concurring in part and concurring in judgment in part); *id.*, at 497–501 (KENNEDY, J., concurring in judgment in part and dissenting in part).[2]

Second, New Hampshire does not dispute, and our

──────────

2005); Mass. Gen. Laws, ch. 112, §12S (West 2004); Mich. Comp. Laws §§722.902(b), 722.905 (2002); Miss. Code Ann. §41–41–57 (2005); Mont. Code Ann. §§50–20–203(5), 50–20–208 (2005); Neb. Rev. Stat. §71–6906(1) (2003); Nev. Rev. Stat. §442.255(1) (2003); N. J. Stat. Ann. §§9:17A–1.3, 9:17A–1.6 (West 2002); N. M. Stat. Ann. §30–5–1 (2004); N. C. Gen. Stat. Ann. §90–21.9 (Lexis 2003); N. D. Cent. Code Ann. §§14–02.1–03(1), 14–02.1–03.1(2) (Lexis 2004); Ohio Rev. Code Ann. §2919.121(D) (Lexis 2003); Okla. Stat., Tit. 63, §1–740.2(B) (West Supp. 2006); 18 Pa. Cons. Stat. §§3203, 3206 (2002); R. I. Gen. Laws §23–4.7–4 (1996); S. C. Code Ann. §44–41–30(C)(1) (2002); 2005 S. D. Laws p. 189; Tenn. Code Ann. §37–10–305 (2005); Tex. Occ. Code Ann. §164.052(a)(19) (West Supp. 2005), Tex. S. B. 419 (2005); Utah Code Ann. §§76–7–301(2), 76–7–305 (Lexis Supp. 2005); Va. Code Ann. §18.2–76 (2004); W. Va. Code §16–2F–3 (Lexis 2001); Wis. Stat. §48.375 (2003–2004). Two States give physicians sufficient discretion to perform an abortion to protect minors' health. Me. Rev. Stat. Ann., Tit. 22, §1597–A (2004); Md. Health Code Ann. §20–103 (2005). Four, including New Hampshire, make no exception for minors' health in an emergency. N. H. Stat. §132:26 (2005); Minn. Stat. §144.343 (2004); Mo. Rev. Stat. §188.028 (2000); Wyo. Stat. Ann. §35–6–118 (2003).

[2]It is the sad reality, however, that young women sometimes lack a loving and supportive parent capable of aiding them "to exercise their rights wisely." *Hodgson,* 497 U. S., at 444; see *id.*, at 450–451 and n. 36 (holding unconstitutional a statute requiring notification of both parents, and observing that "the most common reason" young women did not notify a second parent was that the second parent "was a child- or spouse-batterer, and notification would have provoked further abuse" (citation omitted)). See also Department of Health and Human Services, Administration on Children, Youth and Families, Child Maltreatment 2003, p. 63 (2005) (parents were the perpetrators in 79.7% of cases of reported abuse or neglect).

precedents hold, that a State may not restrict access to abortions that are "'necessary, in appropriate medical judgment, for preservation of the life or health of the mother.'" *Casey,* 505 U. S., at 879 (plurality opinion) (quoting *Roe*, 410 U. S., at 164–165); see also *Thornburgh* v. *American College of Obstetricians and Gynecologists*, 476 U. S. 747, 768–769 (1986); *Planned Parenthood Assn. of Kansas City, Mo., Inc.* v. *Ashcroft*, 462 U. S. 476, 482–486 (1983) (opinion of Powell, J.); *Planned Parenthood of Central Mo.* v. *Danforth*, 428 U. S. 52, 79 (1976).

Third, New Hampshire has not taken real issue with the factual basis of this litigation: In some very small percentage of cases, pregnant minors, like adult women, need immediate abortions to avert serious and often irreversible damage to their health. See 296 F. Supp. 2d, at 65, n. 4.

New Hampshire has maintained that in most if not all cases, the Act's judicial bypass and the State's "competing harms" statutes should protect both physician and patient when a minor needs an immediate abortion. See N. H. Rev. Stat. Ann. §627:3(I) (1996) (for criminal liability, "[c]onduct which the actor believes to be necessary to avoid harm to . . . another is justifiable if the desirability and urgency of avoiding such harm outweigh, according to ordinary standards of reasonableness, the harm sought to be prevented by the statute defining the offense charged"); §627:1 (similar for civil liability). But the District Court and Court of Appeals found neither of these provisions to protect minors' health reliably in all emergencies. 296 F. Supp. 2d, at 65–66; 390 F. 3d, at 61–62. And New Hampshire has conceded that, under our cases, it would be unconstitutional to apply the Act in a manner that subjects minors to significant health risks. See Reply Brief for Petitioner 2, 8, 11; Tr. of Oral Arg. 6, 14.

## III

We turn to the question of remedy: When a statute

restricting access to abortion may be applied in a manner that harms women's health, what is the appropriate relief? Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force, see *United States* v. *Raines*, 362 U. S. 17, 20–22 (1960), or to sever its problematic portions while leaving the remainder intact, *United States* v. *Booker*, 543 U. S. 220, 227–229 (2005).

Three interrelated principles inform our approach to remedies. First, we try not to nullify more of a legislature's work than is necessary, for we know that "[a] ruling of unconstitutionality frustrates the intent of the elected representatives of the people." *Regan* v. *Time, Inc.,* 468 U. S. 641, 652 (1984) (plurality opinion). It is axiomatic that a "statute may be invalid as applied to one state of facts and yet valid as applied to another." *Dahnke-Walker Milling Co.* v. *Bondurant*, 257 U. S. 282, 289 (1921). Accordingly, the "normal rule" is that "partial, rather than facial, invalidation is the required course," such that a "statute may . . . be declared invalid to the extent that it reaches too far, but otherwise left intact." *Brockett* v. *Spokane Arcades, Inc.*, 472 U. S. 491, 504 (1985); see also *Tennessee* v. *Garner*, 471 U. S. 1 (1985); *United States* v. *Grace*, 461 U. S. 171, 180–183 (1983).

Second, mindful that our constitutional mandate and institutional competence are limited, we restrain ourselves from "rewrit[ing] state law to conform it to constitutional requirements" even as we strive to salvage it. *Virginia* v. *American Booksellers Assn., Inc.,* 484 U. S. 383, 397 (1988). Our ability to devise a judicial remedy that does not entail quintessentially legislative work often depends on how clearly we have already articulated the background constitutional rules at issue and how easily we can articulate the remedy. In *United States* v. *Grace, supra,* at

180–183, for example, we crafted a narrow remedy much
like the one we contemplate today, striking down a statute
banning expressive displays only as it applied to public
sidewalks near the Supreme Court but not as it applied to
the Supreme Court Building itself. We later explained
that the remedy in *Grace* was a "relatively simple matter"
because we had previously distinguished between side-
walks and buildings in our First Amendment jurispru-
dence. *United States* v. *Treasury Employees*, 513 U. S.
454, 479, n. 26 (1995). But making distinctions in a
murky constitutional context, or where line-drawing is
inherently complex, may call for a "far more serious inva-
sion of the legislative domain" than we ought to under-
take. *Ibid.*

Third, the touchstone for any decision about remedy is
legislative intent, for a court cannot "use its remedial
powers to circumvent the intent of the legislature." *Cali-
fano* v. *Westcott*, 443 U. S. 76, 94 (1979) (Powell, J., con-
curring in part and dissenting in part); see also *Dorchy* v.
*Kansas*, 264 U. S. 286, 289–290 (1924) (opinion for the
Court by Brandeis, J.). After finding an application or
portion of a statute unconstitutional, we must next ask:
Would the legislature have preferred what is left of its
statute to no statute at all? See generally *Booker*, *supra*,
at 227; *Minnesota* v. *Mille Lacs Band of Chippewa Indi-
ans*, 526 U. S. 172, 191 (1999); *Alaska Airlines, Inc.* v.
*Brock*, 480 U. S. 678, 684 (1987); *Champlin Refining Co.* v.
*Corporation Comm'n of Okla.*, 286 U. S. 210, 234 (1932);
*The Employers' Liability Cases,* 207 U. S. 463, 501 (1908);
*Allen* v. *Louisiana*, 103 U. S. 80, 83–84 (1881); *Trade-
Mark Cases*, 100 U. S. 82, 97–98 (1879). All the while, we
are wary of legislatures who would rely on our interven-
tion, for "[i]t would certainly be dangerous if the legisla-
ture could set a net large enough to catch all possible
offenders, and leave it to the courts to step inside" to
announce to whom the statute may be applied. *United*

*States* v. *Reese*, 92 U. S. 214, 221 (1876). "This would, to some extent, substitute the judicial for the legislative department of the government." *Ibid*.

In this case, the courts below chose the most blunt remedy—permanently enjoining the enforcement of New Hampshire's parental notification law and thereby invalidating it entirely. That is understandable, for we, too, have previously invalidated an abortion statute in its entirety because of the same constitutional flaw. In *Stenberg*, we addressed a Nebraska law banning so-called "partial birth abortion" unless the procedure was necessary to save the pregnant woman's life. We held Nebraska's law unconstitutional because it lacked a health exception. 530 U. S., at 930 (lack of a health exception was an "independent reaso[n]" for finding the ban unconstitutional). But the parties in *Stenberg* did not ask for, and we did not contemplate, relief more finely drawn.

In the case that is before us, however, we agree with New Hampshire that the lower courts need not have invalidated the law wholesale. Respondents, too, recognize the possibility of a modest remedy: They pleaded for any relief "just and proper," App. 13 (Complaint), and conceded at oral argument that carefully crafted injunctive relief may resolve this case, Tr. of Oral Arg. 38, 40. Only a few applications of New Hampshire's parental notification statute would present a constitutional problem. So long as they are faithful to legislative intent, then, in this case the lower courts can issue a declaratory judgment and an injunction prohibiting the statute's unconstitutional application.

There is some dispute as to whether New Hampshire's legislature intended the statute to be susceptible to such a remedy. New Hampshire notes that the Act contains a severability clause providing that "[i]f any provision of this subdivision or the application thereof to any person or circumstance is held invalid, such invalidity shall not

affect the provisions or applications of this subdivision which can be given effect without the invalid provisions or applications." §132:28.  Respondents, on the other hand, contend that New Hampshire legislators preferred no statute at all to a statute enjoined in the way we have described.  Because this is an open question, we remand for the lower courts to determine legislative intent in the first instance.

## IV

Either an injunction prohibiting unconstitutional applications or a holding that consistency with legislative intent requires invalidating the statute *in toto* should obviate any concern about the Act's life exception.  We therefore need not pass on the lower courts' alternative holding.  Finally, if the Act does survive in part on remand, the Court of Appeals should address respondents' separate objection to the judicial bypass' confidentiality provision.  The judgment of the Court of Appeals is vacated, and the case is remanded for further proceedings consistent with this opinion.

*It is so ordered.*