**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

AMERICAN BANKERS ASSOCIATION;
THE FINANCIAL SERVICES
ROUNDTABLE; CONSUMER BANKERS
ASSOCIATION,
            *Plaintiffs-Appellees,*

                v.

BILL LOCKYER, Attorney General;
JOHN GARAMENDI,
            *Defendants-Appellants,*

                and

WILLIAM P. WOOD; HOWARD
GOULD, Commissioner of the
Department of Financial
Institutions of the State of
California,
            *Defendants.*

No. 05-17163

D.C. No.
CV-04-00778-
MCE/KJM

12275

AMERICAN BANKERS ASSOCIATION;
THE FINANCIAL SERVICES
ROUNDTABLE; CONSUMER BANKERS
ASSOCIATION,

    *Plaintiffs-Appellants,*

     v.

BILL LOCKYER, Attorney General;
JOHN GARAMENDI; WILLIAM P.
WOOD; HOWARD GOULD,
Commissioner of the Department
of Financial Institutions of the
State of California,

    *Defendants-Appellees.*

No. 05-17206

D.C. No.
CV-04-00778-
MCE/KJM

OPINION

Appeal from the United States District Court
for the Eastern District of California
Morrison C. England, District Judge, Presiding

Argued and Submitted
June 9, 2008—San Francisco, California

Filed September 4, 2008

Before: J. Clifford Wallace and Susan P. Graber,
Circuit Judges, and David A. Ezra,* District Judge.

Opinion by Judge Graber;
Dissent by Judge Wallace

---

 *The Honorable David A. Ezra, United States District Judge for the
District of Hawaii, sitting by designation.

## COUNSEL

Catherine Z. Ysrael and Michele R. Van Gelderen, Deputy Attorneys General, State of California, Los Angeles, California, for the defendants-appellants/cross-appellees.

E. Edward Bruce and Keith A. Noreika, Covington & Burling, Washington, D.C., for the plaintiffs-appellees/cross-appellants.

## OPINION

GRABER, Circuit Judge:

This case comes before us for the second time. *See Am. Bankers Ass'n v. Gould*, 412 F.3d 1081 (9th Cir. 2005). In 2003, the California State Legislature enacted the California Financial Information Privacy Act ("SB1"), Cal. Fin. Code §§ 4050-4060, "for financial institutions to provide their consumers notice and meaningful choice about how consumers' nonpublic personal information is shared or sold by their financial institutions," *id.* § 4051(a). Plaintiffs American Bankers Association, The Financial Services Roundtable, and Consumer Bankers Association filed suit, alleging that the federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §§ 1681-1681x, preempted SB1's regulation of information sharing between financial institutions and their affiliates.

Previously, we held that the affiliate-sharing preemption clause of the FCRA, 15 U.S.C. § 1681t(b)(2),[1] preempted the affiliate-sharing provision of SB1, Cal. Fin. Code § 4053(b)(1),[2]

---

[1]FCRA, 15 U.S.C. § 1681t(b)(2) provides:

No requirement or prohibition may be imposed under the laws of any State—

. . . .

(2)   with respect to the exchange of information among persons affiliated by common ownership or common corporate control, except that this paragraph shall not apply with respect to [a statute not relevant to this appeal.]

[2]SB1 section 4053(b)(1) reads, in relevant part:

A financial institution shall not disclose to, or share a consumer's nonpublic personal information with, an affiliate unless the financial institution has clearly and conspicuously notified the consumer annually in writing . . . that the nonpublic personal information may be disclosed to an affiliate of the financial institution and the consumer has not directed that the nonpublic personal information not be disclosed.

"insofar as [SB1] attempts to regulate the communication between affiliates of 'information,' as that term is used in [15 U.S.C.] § 1681a(d)(1)," *Am. Bankers Ass'n*, 412 F.3d at 1087, which defines "consumer report" information under the FCRA.[3] We remanded to "determine whether, applying this restricted meaning of 'information,' any portion of the affiliate-sharing provisions of SB1 survives preemption and, if so, whether it is severable from the portion that does not." *Id.*

On remand, the district court held that no portion of section 4053(b)(1) survives preemption and that, even if a portion did survive, the court lacked the power to sever the preempted applications. Accordingly, the court enjoined enforcement of section 4053(b)(1) "to the extent [that it is] preempted by 15 U.S.C. [§] 1681t(b)(2)," which, the court ruled, meant the statute in its entirety. On de novo review, *Silvas v. E\*Trade Mortgage Corp.*, 514 F.3d 1001, 1004 (9th Cir. 2008) (preemption); *Ariz. Libertarian Party, Inc. v. Bayless*, 351 F.3d 1277, 1283 (9th Cir. 2003) ( per curiam) (severability), we

As part of the notification process, "consumer[s] shall be provided a reasonable opportunity prior to disclosure of nonpublic personal information to direct that nonpublic personal information not be disclosed." Cal. Fin. Code § 4053(d)(3). SB1 exempts certain closely affiliated institutions from these requirements. *Id.* § 4053(c)(1)-(3).

[3]FCRA § 1681a(d)(1) provides:

The term "consumer report" means any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—

(A)   credit or insurance to be used primarily for personal, family, or household purposes;

(B)   employment purposes; or

(C)   any other purpose authorized under [§ 1681b].

reverse and remand. We hold that section 4053(b)(1) has non-preempted applications and that California law requires that we reform section 4053(b)(1) to sever its preempted applications.

As a preliminary matter, Plaintiffs argue that, under our prior mandate, no "portion" of section 4053(b)(1) survives preemption because no physically distinct segment of the statute "applies only to information that falls outside the FCRA preemption clause." We reject such a hyper-technical reading of our mandate. The previous panel was aware of, and indeed quoted from, the text of SB1 regulating " 'nonpublic personal information.' " *Am. Bankers Ass'n*, 412 F.3d at 1085 (quoting Cal. Fin. Code § 4053(b)(1)). If the question were whether a physically distinct segment of the statute could be severed, the previous panel never would have remanded the case, because the answer is obvious. The panel would have held that, striking "nonpublic personal information" from the statute, no part of the statute survives preemption. But the panel did not so hold. Instead, the panel remanded to determine whether the statute survives beyond "the extent that it applies" to consumer report information as defined by the FCRA. *Id.* at 1087. In other words, we remanded to determine whether SB1 section 4053(b)(1) applies to non-consumer report information and, if so, whether California law allows its application to consumer report information to be severed from the statute.

**[1]** Plaintiffs concede that SB1 has non-preempted applications.[4] Consequently, the only remand question now in dispute is whether California law allows us to sever the preempted applications from the statute by narrowing the statute's reach.

**[2]** Under California law, "[w]hen faced with a question of

---

[4]In their briefing to this court, Plaintiffs stated: "Every such 'portion' of [section] 4053(b)(1) imposes restrictions and prohibitions on affiliate-sharing of 'nonpublic personal information,' which indisputably includes both federally protected and unprotected information."

whether to reform a state statute, the function of a federal court is to divine, to the best of its ability, how the state's highest court would resolve that state law issue." *Kopp v. Fair Political Practices Comm'n*, 905 P.2d 1248, 1259 (Cal. 1995). We must revise the statute "if we conclude that the Legislature's intent clearly would be furthered by application of the revised version rather than by the alternative of invalidation." *People v. Sandoval*, 161 P.3d 1146, 1158 (Cal. 2007); *see also Ayotte v. Planned Parenthood of N. New England*, 546 U.S. 320, 329 (2006) ("[T]he normal rule is that partial, rather than facial, invalidation is the required course, such that a statute may be declared invalid to the extent that it reaches too far, but otherwise left intact." (internal quotation marks and ellipsis omitted)). Specifically, judicial reformation or rewriting of a statute is appropriate "when (i) doing so closely effectuates policy judgments clearly articulated by the enacting body, and (ii) the enacting body would have preferred such a reformed version of the statute over the invalid and unenforceable statute." *Kopp*, 905 P.2d at 1259.

**[3]** Thus, this appeal turns on whether *narrowing* section 4053(b)(1) to exclude the regulation of consumer report information would effectuate the intent of the California Legislature and whether the Legislature would have preferred the narrowed statute to no statute at all.

**[4]** As part of SB1, the Legislature included "Legislative intent" and "Legislative findings" provisions. Cal. Fin. Code §§ 4051, 4051.5. The Legislature stated that, in enacting SB1, it "intends for financial institutions to provide their consumers notice and meaningful choice about how consumers' nonpublic personal information is shared or sold by their financial institutions." *Id.* § 4051(a). The Legislature also stated that its intent in passing SB1 was "[t]o further achieve . . . control for California consumers by providing consumers with the ability to prevent the sharing of financial information among affiliated companies through a simple opt-out mechanism via a clear and understandable notice provided to the consumer."

*Id.* § 4051.5(b)(3). A narrowed version of section 4053(b)(1) would effectuate those statements of intent because it still would enable consumers "to prevent the sharing of financial information"—their non-consumer report financial information.

**[5]** Those statements by the Legislature also demonstrate that it would have preferred a narrowed version of section 4053(b)(1) to no version at all. The Legislature enacted SB1 to protect consumers' financial information by giving consumers notice of, and control over, disclosure of that information. A narrowed version would advance this purpose with respect to financial affiliates, albeit to a lesser extent than the Legislature originally expected. By contrast, wholesale invalidation would not protect at all the sharing of consumer information with affiliates.

**[6]** In addition, the Legislature included a severability clause in its enactment of SB1: "The provisions of this division shall be severable, and if any phrase, clause, sentence, or provision is declared to be invalid or is preempted by federal law or regulation, *the validity of the remainder of this division shall not be affected thereby.*" Cal. Fin. Code § 4059 (emphasis added). Plaintiffs argue that the severability clause does not state that preempted *applications* should be severed from the statute. We are not persuaded that the omission of that word indicates a legislative preference that we strike down the entire statute. In addition to the aforementioned statements of intent to provide consumers with choice and control over the disclosure of their financial information, the Legislature also explicitly declared an intent "[t]o adopt *to the maximum extent feasible* . . . definitions consistent with federal law." Cal. Fin. Code § 4051.5(b)(5) (emphasis added). Moreover, the California Supreme Court has eschewed, as a matter of semantics, the distinction between severing a *phrase* from a statute and severing an *application*. *See Sandoval*, 161 P.3d at 1158-59 n.7 ("In *Kopp*, . . . we rejected any distinction between cases in which the court simply placed a saving con-

struction on the statutory language, thereby constricting the reach of the statute, and a case in which the court found it necessary to disregard language and to substitute reformed language. This distinction suggests a difference of degree, not kind. In practical effect, in all of these cases, we rewrote each statute . . . ." (internal quotation marks, emphases, and ellipses omitted)). Our prior opinion held "nonpublic personal information" to be preempted by federal law as applied to consumer report information. In other words, we declared a portion of the "phrase" to be preempted; under the severability clause, "the validity of the remainder . . . shall not be affected thereby." Cal. Fin. Code § 4059.

**[7]** For the foregoing reasons, we narrow the affiliate-sharing provision of SB1, Cal. Fin. Code § 4053(b)(1), to exclude the regulation of consumer report information as defined by the FCRA, 15 U.S.C. § 1681a(d)(1).

REVERSED and REMANDED.

---

WALLACE, Circuit Judge, dissenting:

I agree with the majority that section 4053(b) has non-preempted applications. However, I disagree that California law permits us to reform section 4053(b) to sever its preempted applications. I would allow the California Legislature to reform section 4053(b) to conform to federal law, if it chooses to do so.

It may be true, as the majority argues, that the Legislature in passing SB1 was concerned with protecting non-preempted consumer information. However, it does not follow by logic or otherwise that the patched-up version of SB1 proposed by the majority would "effectuate[ ] policy judgments *clearly* articulated" by the Legislature, or that the Legislature would necessarily "prefer[ ] such a reformed version of the statute

[over] invalidation of the statute." *Kopp v. Fair Political Practices Comm'n*, 905 P.2d 1248, 1290 (Cal. 1995) (emphasis added). Our very best indicator of the Legislature's intent — the statute itself — suggests that the Legislature would disfavor our interference.

As the majority acknowledges, the statute's own severability clause does not state that preempted applications should be severed; on the contrary, it provides only that "if any phrase, clause, sentence, or provision is declared to be invalid or is preempted by federal law or regulation, the validity of the remainder of this division shall not be affected thereby." Cal. Fin. Code § 4059. Clearly, a "phrase, clause, sentence, or provision" can be severed, but the statute itself does not provide for the more complicated exercise of severing applications adopted by the majority. The majority states that this is a "hyper-technical" reading of the severability clause; I disagree. There is certainly a difference between striking portions or language from a statute, which is what severing a "phrase, clause, sentence, or provision" would do, and leaving intact the language but giving it a different meaning, which is what the majority's severing an application does. Then what prevents us from following the clear language of the statute? We should; that is why I dissent.

Following the important principle of Separation of Powers leads me to the same result. SB1 was a fiercely-negotiated statute that underwent a long process of revisions before it was finally passed. Had the Legislature wanted to provide for the majority's severance-of-applications theory, it could have done so. It has done so in the past. *See Walnut Creek Manor, Inc. v. Fair Employment & Housing Comm'n*, 814 P.2d 704, 717 n.13 (Cal. 1991). It did not do so when it passed SB1.

I would therefore affirm the district court's holding that, even if a portion of section 4053(b)(1) survives preemption, this court lacks the power to sever the preempted applications.