**William H. THOMAS, Jr., Plaintiff,**

v.

**John SCHROER, Commissioner of Tennessee Department of Transportation, in his individual capacity; and John Reinbold; Patti Bowlan; Robert Shelby; Shawn Bible; and Connie Gilliam, in their individual capacities, Defendants.**

**No. 2:13–cv–02987–JPM–cgc.**

United States District Court,
W.D. Tennessee,
Western Division.

Signed June 24, 2015.

William H. Thomas, Jr., Law Office of William H. Thomas, Jr., Memphis, TN, for Plaintiff.

Dawn Jordan, Amanda Shanan Jordan, Tennessee Attorney General's Office, Nashville, TN, George G. Boyte, Jr., Jackson, TN, for Defendants.

## ORDER GRANTING PLAINTIFF'S MOTION FOR EMERGENCY TEMPORARY RESTRAINING ORDER

JON P. McCALLA, District Judge.

Before the Court is Plaintiff's Motion for Emergency Temporary Restraining Order, filed June 10, 2015. (ECF No. 96.) Defendants filed a Response in Opposition on June 15, 2015. (ECF No. 99.) For the following reasons, the Court GRANTS Plaintiff's motion.

## I. BACKGROUND

This case concerns alleged violations of Plaintiff William H. Thomas Jr.'s constitutional rights. Thomas alleges the Tennessee Department of Transportation (TDOT) violated his First, Fifth, and Fourteenth Amendment rights when it removed certain of Plaintiff's billboards and signs displaying noncommercial content pursuant to the Billboard Regulation and Control Act of 1972 ("Billboard Act"), as set forth at Tennessee Code Annotated §§ 54–21–101 *et seq.* Thomas asserts that the billboards displaying noncommercial content are exempt from permitting pursuant to Tenn.Code Ann. § 54–21–107(a)(1) (2008).

### A. Procedural Background

On December 17, 2013, Thomas filed a Complaint against all Defendants. (ECF No. 1.) On February 3, 2014, Defendants filed their First Motion to Dismiss for Lack of Jurisdiction. (ECF No. 12.) Defendants moved to dismiss, inter alia, claim no. 4 for declaratory relief as to the Crossroads Ford sign. (*Id.* at 1.) On March 10, 2014, Defendants filed their answer to the original complaint (ECF No. 1). (ECF No. 17.) The Court granted Thomas leave to amend the Complaint as to the claim for retaliation, and dismissed as moot in part Defendants' motion to dismiss. (ECF No. 34.) Thomas filed his Amended Complaint on October 27, 2014. (ECF No. 45.)

On October 28, 2014, Defendants filed their First Motion for Partial Dismissal of Second Amended Complaint for Failure to State a Claim. (ECF No. 46). Thomas responded in opposition to Defendants' motion to dismiss on November 28, 2015. (ECF No. 57.)

On May 22, 2015, Thomas filed a motion to amend the existing scheduling order and filed two motions to compel discovery. (ECF Nos. 86–88.) On May 22, 2015, Thomas' counsel filed a motion to withdraw as attorney (ECF No. 85), which the Court granted on June 15, 2016 (ECF No. 103). Plaintiff now precedes pro se in the case. Thomas' motions to compel were referred to the Magistrate Judge for determination on June 19, 2015. (ECF Nos. 106–07.)

On June 10, 2015, Plaintiff filed an Emergency Motion for Temporary Re-

straining Order ("TRO"), seeking to prevent Defendants from removing his sign at the Crossroads Ford location. (ECF No. 96.) Plaintiff also seeks to enjoin Defendants from executing any judgments "resulting [from] or associated with the Crossroads Ford billboard sign until such time as a hearing can be held on the issues . . . ." (*Id.* at 1.) On June 11, 2015, Defendants filed a response in opposition to the motion for TRO. (ECF No. 99.) On June 18, 2015, a Motion Hearing was held regarding the TRO motion. (ECF No. 104.)

### B. Factual Background

Defendants sought to have the Crossroads Ford sign removed through an ongoing enforcement action in Chancery Court in Shelby County, Tennessee. (Am. Compl. ¶ 27; *see* ECF No. 96–1 at PageID 1399–1404.) In April and October of 2011, Defendants removed two of Thomas' outdoor advertising signs (the "Kate Bond" signs). (Am. Compl. ¶¶ 33, 37; ECF No. 79 ¶¶ 33, 37.) In October 2014, Defendants removed another of Thomas' outdoor signs (the "Perkins Road sign"), even though according to Thomas, "[the] billboard was displaying exclusively on-premise, noncommercial content and therefore exempt from the permitting requirements of T.C.A. § 54–21–107(a)(1)." (Am. Compl. ¶ 40; ECF No. 79 ¶ 40.)

On May 26, 2015, Thomas received a letter on behalf of TDOT stating that Thomas must remove the sign structure at the Crossroads Ford location by June 26, 2015. (ECF No. 96–1 at PageID 1399.) Thomas also received a proposed order of judgment "declaring an unlawful billboard to be a public nuisance and permanent injunction for removal of unlawful billboard," to be subsequently submitted in Chancery Court in Shelby County, Tennessee. (*Id.* at PageID 1401–03.) Thomas filed the instant motion to prevent removal of the Crossroads Ford sign by TDOT.

## II. STANDARD OF REVIEW

Like a preliminary injunction, a temporary restraining order is an extraordinary remedy "designed to preserve the relative positions of the parties until a trial on the merits can be held." *Cf. Tennessee Scrap Recyclers Ass'n v. Bredesen,* 556 F.3d 442, 447 (6th Cir.2009). The Court considers "four factors when determining whether to grant a temporary restraining order: '(1) whether the movant has a "strong" likelihood of success on the merits; (2) whether the movant would otherwise suffer irreparable injury; (3) whether issuance of [a TRO] would cause substantial harm to others; and (4) whether the public interest would be served by issuance of [a TRO].' " *Kendall Holdings, Ltd. v. Eden Cryogenics LLC,* 630 F.Supp.2d 853, 860 (S.D.Ohio 2008) (quoting *Leary v. Daeschner,* 228 F.3d 729, 736 (6th Cir.2000)).

No one factor is dispositive; instead the court must balance all four factors. *In re De Lorean Motor Co.,* 755 F.2d 1223, 1229 (6th Cir.1985). The burden of persuasion is on the party seeking the injunctive relief. *Stenberg v. Cheker Oil Co.,* 573 F.2d 921, 925 (6th Cir.1978).

## III. ANALYSIS

### A. Strong Likelihood of Success on the Merits

Thomas asserts violations of four constitutionally protected rights as grounds for granting a TRO with regard to the Crossroads Ford sign: 1) First Amendment right to freedom of speech; 2) procedural due process; 3) substantive due process; and 4) equal protection under the law. Because Thomas has established a strong likelihood of success on First Amendment grounds, the Court declines to address the remaining constitutional grounds asserted.

### 1. Content–Based Speech

"The First Amendment, applicable to the States through the Fourteenth Amendment, prohibits the enactment of laws 'abridging the freedom of speech.'" *Reed v. Town of Gilbert, Ariz.*, — U.S. ——, 135 S.Ct. 2218, 2226, 192 L.Ed.2d 236, 2015 WL 2473374, at *6 (2015) (quoting U.S. Const., Amdt. 1). The government "'has no power to restrict expression because of its message, its ideas, its subject matter, or its content.'" *Id.* (quoting *Police Dept. of Chicago v. Mosley*, 408 U.S. 92, 95, 92 S.Ct. 2286, 33 L.Ed.2d 212 (1972)). "Content-based laws ... are presumptively unconstitutional and may be justified only if the government proves that they are narrowly tailored to serve compelling state interests." *Id.*

On June 18, 2015, the Supreme Court issued its opinion in *Reed*, finding that certain exemptions to the town of Gilbert's sign code were facially content-based and failed strict scrutiny analysis. In the *Reed* opinion, the Supreme Court laid out the test for determining whether a provision regulating signage was content-neutral or content-based.

> Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed. E.g., *Sorrell v. IMS Health, Inc.*, 564 U.S. ——, ——, ——, 131 S.Ct. 2653, 2663–2664, 180 L.Ed.2d 544 (2011); *Carey v. Brown*, 447 U.S. 455, 462, 100 S.Ct. 2286, 65 L.Ed.2d 263 (1980); *Mosley, supra*, at 95, 92 S.Ct. 2286. This commonsense meaning of the phrase "content based" requires a court to consider whether a regulation of speech "on its face" draws distinctions based on the message a speaker conveys. *Sorrell, supra*, at ——, 131 S.Ct. at 2664. Some facial distinctions based on a message are obvious, defining regulated speech by particular subject matter, and others are more subtle, defining regulated speech by its function or purpose. Both are distinctions drawn based on the message a speaker conveys, and, therefore, are subject to strict scrutiny.

*Reed*, 135 S.Ct. at 2227. Additionally, the Supreme Court made clear that the first step in the analysis is to "determin[e] whether the law is content neutral on its face." *Id.* at 2228. "A law that is content based on its face is subject to strict scrutiny regardless of the government's benign motive, content-neutral justification, or lack of animus toward the ideas contained in the regulated speech." *Id.* (internal quotation marks omitted). Moreover, "a speech regulation targeted at specific subject matter is content based even if it does not discriminate among viewpoints within that subject matter." *Id.* at 2230. In *Reed*, the Supreme Court also gave examples of aspects of signs that could be regulated in a content-neutral manner, including "size, building materials, lighting, moving parts, and portability." *Id.* at 2232.

With regard to the sign code exemptions at issue in *Reed*, the Supreme Court explained,

> The Town's Sign Code is content based on its face. It defines "Temporary Directional Signs" on the basis of whether a sign conveys the message of directing the public to church or some other "qualifying event." Glossary 25. It defines "Political Signs" on the basis of whether a sign's message is "designed to influence the outcome of an election." *Id.*, at 24. And it defines "Ideological Signs" on the basis of whether a sign "communicat[es] a message or ideas" that do not fit within the Code's other categories. *Id.*, at 23. It then subjects each of these categories to different restrictions. The restrictions in the Sign Code that apply to any given sign thus

depend entirely on the communicative content of the sign. If a sign informs its reader of the time and place a book club will discuss John Locke's Two Treatises of Government, that sign will be treated differently from a sign expressing the view that one should vote for one of Locke's followers in an upcoming election, and both signs will be treated differently from a sign expressing an ideological view rooted in Locke's theory of government.

*Reed,* 135 S.Ct. at 2227.

Multiple provisions of the Billboard Act are affected by the constitutional analysis set forth in *Reed.* Most relevant to Thomas' motion is the on-premise exemption codified in § 54–21107(a)(1). This section exempts outdoor advertising of "activities conducted on the property on which they are located" from regulation under § 54–21–104. Similar to the sign code exemptions in *Reed,* § 107(a)(1) "draws distinctions based on the message a speaker conveys." The only way to determine whether a sign is an on-premise sign, is to consider the content of the sign and determine whether that content is sufficiently related to the "activities conducted on the property on which they are located." Consequently, under the *Reed* test, the on-premise exemption is facially content-based.

*Reed* calls into question the constitutionality of several other sections of the Billboard Act that are of significance. Section 54–21–107(a)(2) of the Billboard Act is another exemption to regulation under § 54–21–104. It also is content-based because the exemption applies to signs, the content of which relate to "the sale or lease of property on which they are located."

Section 54–21–103 sets forth the basic location restrictions for outdoor advertising under the Billboard Act and lists certain exceptions to those restrictions. The first exception applies to "[d]irectional or other official signs and notices including, but not limited to, signs and notices pertaining to natural wonders, scenic and historical attractions that are authorized or required by law." § 54–21–103(1). Similar to the on-premise exemption, this section is content-based because the determination of whether a sign falls within the exception depends on whether a sign's content relates to natural wonders or scenic and historical attractions. Sections 103(2)-(3) mirror the content-based exemptions in sections 107(a)(1)-(2).

Accordingly, there is a strong likelihood that multiple sections of the Billboard Act are facially content-based and subject to strict scrutiny under *Reed.*

### 2. Strict Scrutiny

■ Once the Court determines that provisions of the Billboard Act are content-based, the Court must apply strict scrutiny to determine whether those provisions pass constitutional muster. Consequently, the content-based provisions will fail constitutional muster if the Government cannot demonstrate that the divergence in regulations based on the content of the signs "furthers a compelling governmental interest and is narrowly tailored to that end." *Reed,* 135 S.Ct. at 2231.

In the instant case, the primary governmental interests are traffic safety and maintaining the aesthetic appeal of the highway system. These same interests were addressed in *Reed.* There the Supreme Court found that "[a]ssuming for the sake of argument that those are compelling governmental interests, the Code's distinctions fail as hopelessly underinclusive." *Reed,* 135 S.Ct. at 2231.

Just as in Reed, off-premise signs "are no greater an eyesore" than on-premise signs. *See id.* (internal quotation marks omitted). Additionally, the Government has not shown how limiting off-premise signs provides greater traffic safety than

limiting signs "advertising activities conducted on the property on which they are located." *See* § 107(a)(1). Consequently, the on-premise exemption fails the strict scrutiny analysis. For identical reasons, §§ 54–21–103(1)–(3) and §§ 54–21–107(a)(2) also fail strict scrutiny.

Accordingly, there is a strong likelihood that at least §§ 54–21–103(1)–(3) and §§ 54–21–107(a)(1)–(2) of the Billboard Act are unconstitutional.

### 3. Severability

 Typically when a portion of a state law is found to be unconstitutional, the Court will sever that portion from the remaining constitutional portions of the law. *Ayotte v. Planned Parenthood of N. New England,* 546 U.S. 320, 328–29, 126 S.Ct. 961, 163 L.Ed.2d 812 (2006) ("Generally speaking, when confronting a constitutional flaw in a statute, we try to limit the solution to the problem. We prefer, for example, to enjoin only the unconstitutional applications of a statute while leaving other applications in force ... or to sever its problematic portions while leaving the remainder intact...."). In determining severability, "[f]irst, the Court seeks to avoid 'nullify[ing] more of a legislature's work than is necessary,' because doing so 'frustrates the intent of the elected representatives of the people.' For this reason where partial, rather than facial, invalidation is possible, it is the 'required course.'" *Northland Family Planning Clinic, Inc. v. Cox,* 487 F.3d 323, 333 (6th Cir.2007) (quoting *Ayotte,* 546 U.S. at 329, 126 S.Ct. 961). Second, "mindful that [the Court's] constitutional mandate and institutional competence are limited, [the Court] restrain[s] [itself] from rewriting state law to conform it to constitutional requirements even as [the Court] strive[s] to salvage it." *Ayotte,* 546 U.S. at 329, 126 S.Ct. 961 (internal alteration and quotation marks omitted). "[W]here the Court has established a bright line constitutional rule, it is

more appropriate to invalidate parts of the statute that go beyond the constitutional line, whereas 'making distinctions in a murky constitutional context, or where line-drawing is inherently complex, may call for a far more serious invasion of the legislative domain than we ought to undertake.'" *Northland Family Planning Clinic,* 487 F.3d at 333 (quoting *Ayotte,* 546 U.S. at 330, 126 S.Ct. 961). "Finally, the Court considers legislative intent, and inquires whether the legislature would prefer to have part of the statute remain in force." *Id.* at 333–34. "A court's conclusion that the legislature would have enacted a statute absent an unconstitutional provision must be based on evidence that is obvious on the 'face of the statute' ...; otherwise the court risks overstepping into functions reserved for the legislature." *E. Brooks Books, Inc. v. City of Memphis,* 633 F.3d 459, 466 (6th Cir.2011) (quoting *Memphis Planned Parenthood, Inc. v. Sundquist,* 175 F.3d 456, 466 (6th Cir. 1999)).

 In the instant case, the third factor controls. In *Midwest Media Property, L.L.C. v. Symmes Township, Ohio,* 503 F.3d 456, 463 (6th Cir.2007), the Court of Appeals found severability of a local sign ordinance appropriate based on Ohio state law. Tennessee state severability law, however, differs substantially from Ohio state law. Under Tennessee law, severance of unconstitutional portions of a statute is generally disfavored. *Davidson Cnty. v. Elrod,* 191 Tenn. 109, 232 S.W.2d 1, 2–3 (1950); *see also E. Brooks Books,* 633 F.3d at 466. "Tennessee law permits severance only when 'it is made to appear from the face of the statute that the legislature would have enacted it with the objectionable features omitted.'" *Memphis Planned Parenthood,* 175 F.3d at 466 (quoting *State v. Harmon,* 882 S.W.2d 352, 355 (Tenn.1994)). The question in the in-

stant case is whether it appears on the face of the Billboard Act that the Tennessee General Assembly would have passed the statute without the content-based provisions in the Billboard Act. *See id.*

In the instant case, Plaintiff has shown a strong likelihood that § 54–21–103(1) and §§ 54–21–107(a)(1)–(2) are unconstitutional under the *Reed* test for content neutrality. Section 103 establishes general restrictions of and exceptions to the Billboard Act. Section 107 sets out advertising that is exempt from regulation under the Billboard Act. These sections guide the fundamental determination of which signs and other advertising structures are subject to regulation of the Billboard Act. The remaining sections of the Billboard Act deal with the minutiae of executing the Act, rather than determining substantive compliance, and are generally dependent on these two sections of the Act. For example, § 54–21–104 provides guidelines for issuing licenses and permits based on compliance with § 103 and assuming § 107 does not apply. Section 105 addresses the remedies and consequences of failing to comply with § 103. Section 106 deals with the handling of fees collected in connection with permitting under § 104. Section 108 outlines the commissioner's authority to acquire certain outdoor advertising. These sections lie on the periphery of § 103 and § 107, which establish the regulatory base for all signs erected "within six hundred sixty feet (660') of the nearest edge of the right-of-way and visible from the main traveled way of the interstate or primary highway systems" in the State of Tennessee. Given the various competing interests and constitutional constraints on the regulation of this type of speech, it is not clear on the face of the statute that the Tennessee legislature would have enacted the Billboard Act absent these key provisions establishing the overall applicability of the statute.

With regard to the other factors set forth by the Supreme Court, the Court finds that severing the unconstitutional exceptions and exemptions from the rest of the Billboard Act oversteps the line between preserving the "legislature's work" and "rewriting state law to conform it to constitutional requirements." *See Northland Family Planning Clinic,* 487 F.3d at 333. Accordingly, there is a strong likelihood that the unconstitutional provisions of the Billboard Act are not severable from the Act as a whole.

For these reasons, Thomas has established a strong likelihood that the Billboard Act is an unconstitutional restraint on freedom of speech pursuant to the First Amendment.

### B. Irreparable Injury

"The loss of First Amendment freedoms, for even minimal periods of time unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976). In the instant case, "Defendants concede that, if Plaintiff is correct, and the Crossroads Ford billboard, in its current format as non-commercial message, is entitled to First Amendment protections, then there would potentially be irreparable harm if said billboard is removed." (ECF No. 99 at 10.) Because Thomas has established a strong likelihood that removal of the Crossroads Ford sign pursuant to the Billboard Act is unconstitutional, the Court finds that Thomas would suffer irreparable injury absent issuance of a TRO.

### C. Substantial Harm to Others

With regard to substantial harm to others, Defendants argue that "[i]f a TRO were granted, then the public could be harmed in that TDOT could lose federal funding if the Billboard Act is found to be unconstitutional." (ECF No. 99 at 10.)

Thomas contends that "[t]he government cannot allege that it will be harmed by allowing citizens and organizations to exercise their free speech rights without constraint of unconstitutional sign restrictions." (ECF No. 96 at 36.)

The Court agrees with Thomas. A determination on whether to issue a TRO is a not a final determination on the merits. Consequently, TDOT would not be at risk of losing federal funding based on the Court's finding that there is a "strong likelihood" that the Billboard Act is unconstitutional. Accordingly, this factor does not weigh in Defendants' favor.

### D. Public Interest

"[I]t is always in the public interest to prevent violation of a party's constitutional rights." *Deja Vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson Cnty., Tennessee*, 274 F.3d 377, 400 (6th Cir.2001) (internal quotation marks omitted). Because Thomas has established a strong likelihood that removal of the Crossroads Ford sign pursuant to the Billboard Act is unconstitutional, the public interest also favors issuance of a TRO.

### E. Balance of the Factors

Having considered the relevant TRO factors, the Court finds that they weigh in favor of issuance of a TRO in the instant case.

### F. Anti–Injunction Act

Defendants allude to the Anti–Injunction Act, 28 U.S.C. § 2283, arguing that it would be inappropriate for the Court to grant the injunctive relief sought by Thomas. Specifically, Defendants assert that Thomas seeks to nullify the Tennessee Court of Appeals ruling in favor of Defendants and that "it would violate principles of federalism" to reverse the Court of Appeals' ruling. (ECF No. 99 at 3–4.)

Although in most cases it would be inappropriate for a federal district court to enjoin state court proceedings, the Supreme Court has held explicitly that " § 1983 is an Act of Congress that falls within the 'expressly authorized' exception of [the Anti–Injunction Act]." *Mitchum v. Foster*, 407 U.S. 225, 243, 92 S.Ct. 2151, 32 L.Ed.2d 705 (1972). Accordingly, the relief sought by Thomas does not exceed the limits of authority granted to federal courts.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion for Emergency Temporary Restraining Order (ECF No. 96) is GRANTED. The Court ORDERS Defendants, their employees, subordinates, agents, or others acting on their behalf to refrain from removing or seeking by order or other means to remove Thomas' sign at the Crossroads Ford location until such time as the Court deems it appropriate to lift the TRO. The Court further ORDERS Defendants, their employees, subordinates, agents, or others acting on their behalf to refrain from seeking to execute on any judgments, orders, or other monetary judgments resulting from or associated with the Crossroads Ford billboard sign until such time as the Court deems it appropriate to lift the TRO.

A telephonic scheduling conference to establish a time for a preliminary injunction hearing and supplemental briefing deadlines will be set by future setting letter.